IN THE COURT OF COMMON PLEAS
MUSKINGUM COUNTY, OHIO

|  |  |  |
|---|---|---|
| MARY LOU ELLIS<br>1327 BLUE AVENUE<br>ZANESVILLE, OHIO 43701 | ) | CASE NO: CH 2023-*0109* |
|  | ) | JUDGE  **JUDGE COTTRILL** |
| **and** | ) | |
| DAVID M. ELLIS<br>1327 BLUE AVENUE<br>ZANESVILLE, OHIO 43701 | ) | |
| Plaintiffs, | ) | |
| **V.** | ) | |
| AMERICAN ECONOMY INSURANCE<br>COMPANY<br>STAT. AGENT: CORPORATION SERVICE<br>3366 RIVERSIDE DRIVE SUITE 103<br>UPPER ARLINGTON, OHIO 43221 | ) | **COMPLAINT** |
|  | ) | <u>**JURY DEMAND**</u><br><u>**ENDORSED HEREON**</u> |
| Defendant. | ) | |

1.      At the time of the subject loss, Plaintiffs, Mary Lou Ellis and David M. Ellis (hereinafter referred to as "Plaintiffs"), owned property and/or had an interest in property located at 1327 Blue Avenue, Zanesville, Muskingum County, State of Ohio.

2.      Defendant, American Economy Insurance Company, now is and at all times herein mentioned, was a corporation and/or business organized and existing under the laws of the state of Ohio and engaged in doing business in Muskingum County as an insurer pursuant to the general insurance laws of the state of Ohio.

3.      Defendant, for and in consideration of a valuable premium paid, issued to Plaintiffs its insurance Policy No. OK7025753, covering loss due to damage by a covered cause of loss to property, including Dwelling, Other Structures, Personal Property, Loss of Use, Additional Coverages and/or Supplemental Coverages, located at 1327 Blue Avenue, Zanesville, Muskingum County, State of Ohio

**EXHIBIT 1**

(hereinafter referred to as "described premises"). Plaintiffs are the Named Insureds under the subject Policy. A copy of said policy, along with endorsements and declaration page showing the coverages in effect at the time of the covered loss, is attached hereto as **"Exhibit A."**

      4.      On or about May 3, 2022, a hailstorm and/or windstorm occurred at the subject property in which the subject property was damaged by the hailstorm and/or windstorm.

      5.      The hailstorm and/or windstorm is a covered cause of loss under the subject insurance policy.

      6.      At the time of the covered cause of loss, the described premises was insured under a policy of insurance issued by Defendant to Plaintiffs. After the subject loss, Plaintiffs notified Defendant of the loss and damage and made a proper and timely claim for their loss pursuant to the terms of their policy with Defendant. Plaintiffs thereafter have fully complied with each and every term, condition, and provision of the policy of insurance on their part to be performed, within their control, and/or have been waived by Defendant, and/or Defendant is estopped from asserting those defenses in regard to the covered loss.

      7.      The insurance policy was in full force and effect at the time of the loss and damage.

      8.      Defendant failed to pay Plaintiffs the amount due and owing to Plaintiffs under terms of the policy.

      9.      Defendant had a duty to pay for any covered loss sustained for which its insured is legally entitled to collect as a result of such loss. This contractual obligation is subject only to any applicable limits which are expressly and unambiguously stated in the insurance policy.

      10.     Defendant breached its duty pursuant to the insurance policy contract by failing to tender Plaintiffs full amount of benefits available for damages caused by the covered cause of loss.

      11.     Plaintiffs further do not waive their rights under their policy by filing this action.

      12.     As a result of the subject loss, Plaintiffs sustained damage to the described property. The provisions of the insurance policy require Defendant to pay Plaintiffs' damages to the described property

as a result of the subject covered loss which in this case is in excess of Twenty- Five Thousand Dollars ($25,000).

13. As a direct and proximate result of the actions and omissions of Defendant, through its agents, adjusters and/or investigators. Plaintiffs have sustained damages as outlined in this complaint and the prayer for damages.

**WHEREFORE,** Plaintiffs, Mary Lou Ellis and David M. Ellis, demand judgment against Defendant, American Economy Insurance Company, for compensatory damages in excess of Twenty-Five Thousand Dollars ($25,000), including, but not limited to, contractual damages, costs, prejudgment interest, and for other costs, expenses incurred and other relief as this court deems just.

Respectfully submitted,

Stephen Whetstone (0088666)
WHETSTONE LEGAL, LLC
Post Office Box 6
2 N. Main St., Unit 2
Thornville, OH 43076
P: 740-785-7730
F: 740-205-8898
steve@whetstonelegal.com

Attorney for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues contained herein.

Stephen Whetstone (0088666)

**REQUEST FOR SERVICE TO THE CLERK:**

      Pursuant to Civ. R. 4.1 (A), please issue alias summons and complaint directed to this court for service by United States Mail by **CERTIFIED MAIL** on the Defendant making same returnable according to law at the address listed in the caption of the complaint.

                                                  _____

                                             Stephen Whetstone (0088666)

# AFFIDAVIT

State of Indiana

County of Hamilton

NAME OF INSURED:     DAVID M ELLIS
                     MARY L ELLIS

POLICY NUMBER:       OK7025753

POLICY DATES:        OCT. 9, 2021 TO: OCT. 9, 2022

Lavette Roberts, archivist of

American Economy Insurance Company

has compared the attached copies of the insurance policy number

listed above and its endorsements with the original records of the

policy of insurance and endorsements contained in the Company's

files we certify that the same is a true and exact recital of all the

provisions in the said original policy and endorsements attached

thereto.

Lavette Roberts
Policy Copy Archivist

April 19, 2023



**Safeco** Insurance™
A Liberty Mutual Company

THE YOUNG INS AGENCY INC
PO BOX 578
ZANESVILLE     OH   43702-0578

August 30, 2021

Policy Number: OK7025753
24-Hour Claims: 1-800-332-3226
Policy Service: (740) 454-9791
Online Account Services: www.safeco.com

**THIS IS NOT A BILL.**

DAVID M ELLIS
MARY L ELLIS
1327 BLUE AVE
ZANESVILLE OH  43701-2403

Thank you for allowing us to continue serving your home insurance needs.   We appreciate your business and the trust that you have placed in us.

This renewal reflects adjustments to your dwelling, other structures, and personal property limits. We have adjusted your dwelling coverage limit to reflect increases in labor and materials costs in your area.   As part of your responsibility to maintain adequate amounts of insurance, please contact your agent to ensure that your limits reflect your dwelling's current features and characteristics, particularly if you have remodeled recently.

Your other structures and personal property limits, which are based on your dwelling coverage, have also been adjusted.   You should review whether your coverage is adequate at least annually, and after each significant personal property purchase.   If you would like to change your limits, or schedule any of your high value items, please contact your agent.

With this renewal the following changes were made, including those requested by you or your agent or broker:

- Your Dwelling Limits (Coverage A) changed from $1,140,600 to $1,233,000.   Other coverage limits listed below also changed since they are factors of your dwelling limits.
- Your Other Structure Limits (Coverage B) changed from $114,060 to $123,300.
- Your Personal Property Limits (Coverage C) changed from $605,640 to $654,700.
- Your Additional Living Expense (Coverage D) changed from $228,120 to $246,600.
- Replacement Cost On Roof Surfacing For Windstorm Or Hail Losses is added.
- Matching of Undamaged Siding, Roofing, Windows is added.   Please refer to the enclosed Policy Declarations and endorsement for complete details.

We would also like to draw your attention to the following:

▫ Your new policy period begins October 9, 2021.   The 12-month premium for this policy is $3,444.00 for the October 9, 2021 to October 9, 2022 policy term.

PLEASE SEE REVERSE

**AMERICAN ECONOMY INSURANCE COMPANY (A SAFECO Company)**
P O BOX 704000, SALT LAKE CITY, UT 84170

OC-429/EP 10/13

● This is not a bill. Your bill will be sent in a separate mailing approximately 25 days before it is due. It will provide an explanation of any money owed, your payment options with applicable fees and your payment due date.

A $429.45 payment for the outstanding bill on your account is due on September 20, 2021.

If you have any questions or wish to make any changes to your policy, you can do so by calling your agent at (740) 454-9791.

We appreciate the opportunity to serve you. Thank you.

Tyler Asher
President, Safeco Insurance


**A Liberty Mutual Company**

## CUSTOMER ACCOUNT SUMMARY
AUGUST 30, 2021

**AGENT:**
THE YOUNG INS AGENCY INC
PO BOX 578
ZANESVILLE    OH  43702-0578

(740) 454-9791

INFO@YOUNGINSAGENCY.COM

**CUSTOMER:**
DAVID M ELLIS
MARY L ELLIS
1327 BLUE AVE
ZANESVILLE OH  43701-2403

**Account Number:**
71116005566

| QUESTIONS? | Policy Services:<br>(740) 454-9791 | Online Account Services:<br>www.safeco.com/myaccount | 24-Hour Claims:<br>1-800-332-3226 |
|---|---|---|---|

Thank you for being a valued customer.

At Safeco, we partner with your agent to provide you with a broad portfolio of products, responsive customer service and options that are simple and convenient.   Your Safeco Package is a comprehensive combination of convenience, savings and protection.   And it's our priority to protect the things and people that matter most to you.

Enclosed are important documents about your policy renewal.   If you have questions regarding your coverage or other products offered by Safeco, please contact your agent.

We appreciate your business and the trust you place in us to meet your insurance needs.

**YOUR POLICY DETAILS:**

| Policy | Policy Number | Policy is Effective From | To | Term Premium |
|---|---|---|---|---|
| HOMEOWNERS | OK7025753 | 10/09/2021 | 10/09/2022 | $3,444.00 |

Discounts applied to this policy:  No discounts applied
Issued by:  American Economy Insurance Company

| AUTOMOBILE | K3104229 | 10/09/2021 | 10/09/2022 | $1,416.90 |
| If you pay in full or use the 2-pay plan | | | | $1,260.20 |

Discounts applied to this policy:  Account, Anti-Theft, Advance Quoting, Accident Free, Violation Free, Coverage, Homeowners, Multi-Car, Low Mileage
Issued by:  Safeco Insurance Company of Illinois

| UMBRELLA | UK6005566 | 10/09/2021 | 10/09/2022 | $643.00 |

Discounts applied to this policy:  No discounts applied
Issued by:  Safeco Insurance Company of America



**THIS IS NOT A BILL.** Please do not send payment now. You will be receiving a separate invoice statement(s) based on the payment schedule you selected. Thank you for selecting us to service your insurance needs.

OC-726/EPA 4/09
G1

# Ask yourself: Do you have enough insurance coverage?

**How much would it take to reconstruct your home?**

Surprisingly, it has been estimated that 58% of American homes are underinsured by an average of 21%*. Make sure yours isn't one of them.

Each home is unique. You know your home best. It's your responsibility to make sure you're "fully insured" and "insured to value." That means you need to have enough insurance coverage to rebuild your home and replace all of your personal belongings in the event of total loss.

**How can you determine your needs? Ask yourself the questions below. If you need help answering them, call your agent and discuss your insurance needs with them.**

They will assist you in determining how much insurance would be needed to fully protect your home and belongings.

**How much would it take to reconstruct your home at today's prices?**
Things to consider:
- Your home's age (older homes tend to be more expensive to reconstruct) and style (contemporary, colonial, ranch, etc.)
- Features — fireplaces, cabinetry, built-in features, vaulted ceilings
- Flooring — hardwood, tile, natural stone, carpeting
- Finishes — crown molding, window and floor trim, faux paint, wall paper, wainscoting, chair rails, staircases, etc.
- Recent improvements you may have made (remodeled bathroom or kitchen, recessed lighting, built-in cabinets)
- A basement you may have finished or a room you may have added

**How much is enough to replace the structures surrounding your home at today's prices?**
Things to consider:
- Your fence, detached garage, gazebo, barn or storage shed
- If you have an in-ground swimming pool or just repaved your driveway or sidewalk

**What would it take to replace your personal belongings at today's prices?**
Things to consider:
- All your basics (furniture, rugs, linens, kitchenware, tools) and every electronic gadget
- Your entire wardrobe, your jewelry, medicines and personal effects
- Have you made any big purchases lately?
- If you have a garage full of tools, are passionate about the latest gadgets or collect just about anything, you should seriously consider getting more personal belongings coverage than the standard policy provides.

*Copyright 2008 Marshall & Swift / Boeckh, LLC and its licensors. All rights reserved. Used with permission.

# Let's make sure you're "fully insured."

Your agent uses replacement cost estimation tools to establish a starting point for your insurance coverage. But you know your home best. And we look to you to give your agent the most complete, up-to-date information in order to protect your home and lifestyle. Here are two quick things you can do today:

1. **Look critically at your coverage statement page (also known as the policy declarations page, which comes after the opening letter in this package).** Do you believe you have enough Coverage A? (This is the amount you'd get for reconstruction of an as-close-as-possible replica of your home in the event of total loss.) If you're not sure, call your agent for help.

2. **Take inventory.** Compare the value of your personal belongings to the Coverage C amount on your coverage statement page.

**It's important to know: your home's market value is totally different from what it would cost to reconstruct.** Today's market value reflects economic conditions, taxes, school districts, the market value of land and many other factors that have nothing to do with how much it would cost to reconstruct your home from scratch.

Reconstruction cost — the amount needed to get you back home quickly — is based almost exclusively on the cost of materials and labor as well as demand for contractor services. In the event of total loss, a properly insured Safeco policyholder can rebuild with the same quality of materials and workmanship in their current home (unless a functional replacement cost policy was deliberately selected). Of course, we hope you'll never need these services. But we'll all sleep better knowing you're fully insured.

Thank you for trusting Safeco with your home insurance needs.



**Safeco** Insurance.
A Liberty Mutual Company

## NOTICE OF INFORMATION PRACTICES

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information" or "information") and we value you as a customer.

To learn more about how we collect and use information about you, please read the following notice.

**OUR SOURCES OF INFORMATION ABOUT YOU**

Most of the information we obtain comes directly from you and your independent insurance producer. Your application gives us information we need to review your request, such as your name, address and Social Security Number.

We may also ask for information from other outside sources, including:

- Your transactions with our affiliates or other insurance companies (such as your payment history or claims history); and/or,

- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record, claims history or verification of the value and condition of your property).

Insurance support organizations from which we obtain information may keep such information and disclose it to others as permitted by law.

If we obtain medical information about you, it is generally received in connection with the administration or management of your insurance policy or claim or for the detection and prevention of fraud. We will not share your medical information with our affiliates or non-affiliates for marketing purposes.

It is our policy to treat information we receive about you in the same confidential way we treat information that you have provided to us on your application. The same confidentiality applies to information about our former customers.

**OUR USE OF INFORMATION ABOUT YOU**

We only disclose personal information about you as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. We require these parties to use your personal data only for the reasons we gave it to them. These third parties may include:

- Insurance support organizations, consumer reporting agencies or other insurance companies (including for the detection and prevention of fraud);

- Independent insurance producers authorized to sell Safeco insurance products;

- Independent contractors (such as automobile repair facilities, towing companies, property inspectors and independent claims representatives);

- Auditors, attorneys, courts and government agencies;

- Other companies which may reinsure your policy or with which you have other coverage;

- Group policyholders in connection with reporting claims data or an audit; and/or,

- Other companies and insurance support organizations for actuarial or research studies.

We may also disclose your personal information to other financial institutions with which we have joint marketing agreements for products offered by Safeco and in response to judicial orders such as subpoenas.

We may also share information about our transactions (such as payment history) and experiences (such as claims made) with you within our Safeco family of companies.

We do not sell your personal information to others and we do not provide your information to third parties who are doing business on our behalf for their own marketing purposes.

**PROTECTING YOUR INFORMATION FROM UNAUTHORIZED ACCESS**

We maintain physical, electronic and administrative safeguards to protect your information from unauthorized access. Our employees are authorized to access customer information only for legitimate business purposes.

**INDEPENDENT SAFECO INSURANCE AGENTS**

The independent insurance producers authorized to sell Safeco products are not Safeco employees and are not subject to Safeco's privacy policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco producer to learn more about their privacy practices.

**HOW YOU CAN REVIEW YOUR INFORMATION**

You can request a copy of the information about you in our files to review it for accuracy. You must make your request in writing. Within 30 business days (or as required by law) of receiving your request, we will send you the information. We will advise you of any person or group to whom we have given the information during the last two years. We will also give you the name and address of any reporting organization from which we received information about you.

There are certain types of information, such as information collected when we evaluate a claim or when the possibility of a lawsuit exists, that we are not required to provide you. We obtain medical information about you only in connection with claims and lawsuits. If the law allows you to review such information in our files, we will include it with the other information we send to you.

**IF YOU DISAGREE WITH OUR RECORDS**

If you believe information in our files is wrong, you can notify us in writing. We will review your file within 30 business days of receiving your notice. If we agree with you, we will amend our records and notify you about the change. This change will become part of the file. It will be included in any future disclosures to others and will be sent to:

- Anyone you designate who may have received the information during the previous two years.
- Any person or organization who may have received the information from us during the previous seven years.
- Insurance support organizations that provided the information that was amended or changed pursuant to your request.

If we disagree with you, we will explain why. You can provide us with a written statement explaining why you believe the information is wrong. This statement will become part of the file and will be included in any future disclosures of the disputed subject matter. Your statement will also be sent to the persons listed above.

**SAFECO'S WEB SITE**

If you have Internet access and want to learn more about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

**This Privacy Statement applies to the following members of the Safeco family of companies:**

**American Economy Insurance Company**
**American States Insurance Company**
**American States Insurance Company of Texas**
**American States Preferred Insurance Company**
**First National Insurance Company of America**
**General Insurance Company of America**
**Insurance Company of Illinois**
**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco Insurance Company of Indiana**
**Safeco Insurance Company of Oregon**
**Safeco National Insurance Company**
**Safeco Surplus Lines Insurance Company**

(For mailing address, please contact your agent of the nearest local Safeco office.)

© 2011 Safeco Insurance Company of America, Member of Liberty Mutual Group. All Rights Reserved.

## Information about your Policy

Policy Number: OK7025753

DAVID M ELLIS
MARY L ELLIS
1327 BLUE AVE
ZANESVILLE OH 43701-2403

Like many insurance companies, Safeco Insurance considers many factors, including information based on your credit history, to determine your premium. You have the option to request that we re-evaluate your insurance policy using current credit information. If you request that we update your credit information, it may result in a quoted premium either higher or lower than your current premium. To submit a request, return this form to Safeco Insurance, Attn: Policy Support, P.O. Box 704000, Salt Lake City, UT 84170-4000 or fax it to (877) 344-5107. You may submit a request once every 12 months or as otherwise permitted by law. Any changes will be applied at your next renewal.

By returning this form, you request Safeco Insurance to re-evaluate your policy based on your current credit information.

CN-7402/EP 8/15
G2



## IMPORTANT NOTICE — PLEASE REVIEW CAREFULLY

We take our responsibility to our customers seriously, and part of that responsibility is always keeping you informed. Recently, we introduced a new version of our Safeco Homeowners policy.

Enclosed with your renewal package is the updated version of your policy. Your new policy better reflects the current coverage needs of most homeowners, allowing us to provide the greatest possible protection at an affordable price.

**Reviewing Your Coverage**

For information regarding this change, please review the Summary of Changes to Your Policy below.

**We're Here to Help**

If you would like to more information on these changes or have any other questions about your policy, please contact your independent Safeco agent or broker listed on the Policy Declarations.

***The summary that follows is for information purposes only and does not provide coverage. Your policy forms, along with the Policy Declarations, provide complete details of your coverage. If the below summary conflicts with the applicable policy language, the policy language prevails.***

## SUMMARY OF CHANGES TO YOUR POLICY

The following is a summary of the changes we believe are most significant. The changes are listed in the order the coverages or provisions appear in your new policy.

- A new definition is added for "roof surfacing".
- The Continuous or repeated seepage or leakage of water or steam exclusion is updated to specifically state a period of 14 days.
- An additional coverage for Matching of Undamaged Siding, Roof Surfacing, and/or Windows has been added.
- The Loss Settlement condition is updated to add a provision for matching of undamaged siding, roof surfacing, and/or windows.

**Safeco** Insurance™
A Liberty Mutual Company

## AMERICAN ECONOMY INSURANCE COMPANY (A SAFECO Company)
Administrative office:  175 Berkeley St., Boston, MA 02116 (A stock insurance company.)
## HOMEOWNERS POLICY DECLARATIONS

**POLICY NUMBER:**
OK7025753

**POLICY PERIOD:  FROM:** OCT.  9, 2021 12:01 A.M.
**TO:** OCT.  9, 2022 12:01 A.M.

**NAMED INSURED AND MAILING ADDRESS:**
DAVID M ELLIS
MARY L ELLIS
1327 BLUE AVE
ZANESVILLE OH  43701-2403

**AGENT:**
THE YOUNG INS AGENCY INC
PO BOX 578
ZANESVILLE    OH    43702-0578

**Valued Homeowners Customer Since: OCT.  9, 2020**

**INSURED LOCATION:**
Same

**POLICY SERVICE INFORMATION:**
**TELEPHONE:**  (740) 454-9791
**E-MAIL:**   INFO@YOUNGINSAGENCY.COM
**WEBSITE:** www.younginsagency.com

### IMPORTANT MESSAGES

    - Your policy has renewed effective October 9, 2021.
    - Mine Subsidence Coverage is applicable to your policy.

### LIMITS OF LIABILITY
(Policy Section I - Property Coverages and Section II - Liability Coverages)

| Coverage A — Dwelling | Coverage B — Other Structures | Coverage C — Personal Property | Coverage D — Additional Living Expense | Coverage E — Personal Liability | Coverage F — Medical Payments |
|---|---|---|---|---|---|
| $1,233,000 | $123,300 | $654,700 | $246,600 | $500,000 | $1,000 |

### DEDUCTIBLES.
The following deductibles apply unless otherwise stated within the policy.

|  | AMOUNT |
|---|---|
| Section I, except as noted below | $    1,000 |
| Earthquake Coverage Deductibles |  |
| A - Dwelling | 123,300 |
| B - Other Structures | 12,330 |
| C - Personal Property | 65,470 |

| | PREMIUM |
|---|---|
| BASIC COVERAGES | $    2,950.00 |
| OTHER COVERAGES, LIMITS AND OPTIONAL COVERAGES | $      494.00 |
| DISCOUNTS AND SURCHARGES          You Saved     $439.00 | Included |

### TOTAL POLICY PREMIUM:          $    3,444.00

    **Premium Payer:    Insured**

You may pay your premium in full or in installments. There is no installment fee for
the following billing plans: Full Pay. Installment fees for all other billing plans
are listed below. If more than one policy is billed on the installment bill, only
the highest fee is charged. The fee is:
    $2.00 per installment for recurring automatic deduction (EFT)
    $5.00 per installment for recurring credit card or debit card
    $5.00 per installment for all other payment methods

**AMERICAN ECONOMY INSURANCE COMPANY (A SAFECO Company)**
**HOMEOWNERS POLICY DECLARATIONS**

CONTINUED

POLICY NUMBER:  OK7025753

POLICY LIMITS AND OTHER ADDITIONAL COVERAGES
(Unless otherwise stated, all limits and coverages are included in basic coverages)
COVERAGE LEVEL: PREMIER
SECTION I — PROPERTY COVERAGES
COVERAGE C — PERSONAL PROPERTY — 3. SPECIAL LIMITS OF LIABILITY

| | | | | |
|---|---|---|---|---|
| a.Money, pre-paid cards... | $  2,000 | g.Theft of silverware... | | $ 10,000 |
| b.Rare coins and currency... | $ 10,000 | h.Business Property | | |
| c.Securities, debit cards... | $ 10,000 |    On Premises... | | $  3,000 |
| d.Watercraft... | $  3,000 |     Off Premises Sub-limit | | $  1,000 |
| e.Trailers... | $  3,000 | i.Tapes, records, discs... | | $    500 |
| f.Theft of jewelry, watches... | $ 10,000 | j.Grave Markers... | | $ 10,000 |

| OTHER INCLUDED COVERAGES/POLICY PROVISIONS | Limit | Premium |
|---|---|---|
| Personal Property Replacement Cost | | Included |
| Extended Dwelling Coverage | Up to 100% | Included |
| Loss Assessment Coverage | $    10,000 | Included |
| Personal Offense Coverage | $   500,000 | Included |
| Escape of Water from Sump (Building/Contents) | $1,233,000 | Included |
| Special Personal Property | | Included |
| Building Ordinance or Law Coverage (100%) | $1,233,000 | Included |
| Refrigerated Spoilage Coverage | | Included |
| Matching Undamaged Siding, Roofing, Windows | $    10,000 | Included |
| Fungi, Wet or Dry Rot, or Bacteria | $    10,000 | Included |
| Reasonable Repairs | $     5,000 | Included |
| Fire Department Service Charge | $    10,000 | Included |
| Land Stabilization | $    10,000 | Included |
| Arson Reward | $    25,000 | Included |
| Criminal Conviction Reward — Item a. Information | $     2,500 | Included |
| Criminal Conviction Reward — Item b. Property Recovery | $     5,000 | Included |
| Credit Card, Fund Transfer, Forgery & Counterfeit Money | $    10,000 | Included |
| Volunteer America | | Included |
|    Section I (All Perils Coverage) | | Included |
|    Section II — Liability Coverage | | Included |
|    Section II — Property Damage | $     2,000 | Included |

| OPTIONAL COVERAGES | Limit | | Premium |
|---|---|---|---|
|   Service Line Coverage | $   12,000 | $ | 24.00 |
|   Earthquake Coverage | | $ | 28.00 |
|   Mine Subsidence Coverage | | $ | 1.00 |
|   Identity Recovery Coverage | $   25,000 | $ | 12.00 |
|   Equipment Breakdown Coverage | $   50,000 | $ | 24.00 |
|   Valuable Articles | | | |
|     Itemized Coverage | See Schedule | $ | 405.00 |

| DISCOUNTS AND SURCHARGES | Premium |
|---|---|
|   Multi-Policy Auto Discount | Included |
|   Multi-Policy Umbrella Discount | Included |

For information on other deductibles, coverages or discounts available in your state
or to review your account online, log on to www.safeco.com

FORMS APPLICABLE TO THIS POLICY:

| | |
|---|---|
| HOM-7302/EP 1/09 | - EARTHQUAKE COVERAGE |
| HOM-7307/EP 1/09 | - IDENTITY RECOVERY COVERAGE |
| HOM-7313/OHEP 9/13 | - OHIO MINE SUBSIDENCE INSURANCE COVERAGE FORM |
| HOM-7306/EP 1/09 | - EQUIPMENT BREAKDOWN COVERAGE |
| HOM-7010/EP 6/18 | - VALUABLE ARTICLES COVERAGE |
| HOM-7232/EP 1/09 | - EXECUTION CLAUSE |

## AMERICAN ECONOMY INSURANCE COMPANY (A SAFECO Company)
## HOMEOWNERS POLICY DECLARATIONS

CONTINUED                                    **POLICY NUMBER:** OK7025753

```
HOM-7050/EP R2 11/19 - SAFECO PREMIER HOMEOWNERS POLICY
HOM-7376/EP 1/20    - VALUABLE ARTICLES COVERAGE
HOM-7150/OHEP 12/20 - SPECIAL PROVISIONS - OHIO
HOM-7329/EP 10/18   - SERVICE LINE COVERAGE
```



0000072DEBDEV417655552192

6192

# VALUABLE ARTICLES SCHEDULE

**NAMED INSURED:** DAVID M ELLIS
MARY L ELLIS

**POLICY NUMBER:** OK7025753

## I. GROUP (UNSCHEDULED) COVERAGE

| Category of Property | | | | Group Limit |
|---|---|---|---|---|
| Category A — Fine Arts | | | $ | |
| Fine Arts Breakage | ☐ Included | ☐ Not Included | | |
| Category C — Cameras | | | $ | |
| Category F — Furs | | | $ | |
| Category J — Jewelry | | | $ | |
| Category S — Silverware | | | $ | |

We cover the groups of personal property which are indicated by a blanket limit, above, for the amount stated and subject to the applicable terms of the Valuable Articles Endorsement, HOM-7376.

**SPECIAL LIMITATION FOR CATEGORIES A, F AND J**

The limits of liability shown for Categories A — Fine Arts, F — Furs and J — Jewelry listed above are the most we will pay for each covered loss to the property described, not exceeding  $10,000   for any one article.

**DEDUCTIBLE**

There is no loss payable unless the amount of loss exceeds $500. No more than $500 of the Section I — Property Coverages deductible stated in the Policy Declarations shall apply to items covered by this schedule.

## II. ITEMIZED VALUABLE ARTICLES COVERAGE

We cover the itemized personal property indicated below for the amount stated and subject to the applicable terms of the Valuable Articles Endorsement, HOM-7376.

**DEDUCTIBLE**

No deductible shall apply to loss to items described below.

| ITEM NO. | Category | DESCRIPTION OF SCHEDULED ITEM | INSURED AMT. |
|---|---|---|---|
| 1 | A | SHRIMPERS ATG BOWEN ISLAND FOLLY BEACH PAWLOWSI | $   6,800 |
| 2 | A | VIOLET QUARTER BY JAN PAWLOWSKI | 6,800 |
| 3 | A | OLD MAN BY ZHANG | 3,600 |
| 4 | A | BIDJAR IV IRANIAN RUG | 1,920 |
| 5 | A | MAHINDRA INDIA RUG | 7,325 |
| 6 | A | GHOOM IRAN PRAYER RUG | 1,400 |
| 7 | A | BULURBAFF BOTAH DESIGN IRAN RUG | 800 |
| 8 | A | KURDISH DESIGN AFGHANISTAN RUG | 5,200 |
| 9 | A | ANITIQUED ARYANA AFGHANISTAN RUG | 11,000 |
| 10 | A | KHAMSEH BIRD RUG AFGAHANISTAN | 2,200 |
| 11 | A | MIDIR 19TH CENTURY AFGAHANISTAN RUG | 4,800 |
| 12 | A* | ROSEVILLE BLACKBERRY JARDINEIERE & PEDESTAL | 5,000 |
| 13 | A* | WELLAR WHITE DECORATED VASE | 485 |
| 14 | A* | WELLAR SILVERTONE VASE | 575 |

A*=FINE ART ITEM WITH BREAKAGE COVERAGE

INSURED'S COPY

HOM-7010/EP 6/18

DATE PREPARED:  AUG. 30 2021

## VALUABLE ARTICLES SCHEDULE

**NAMED INSURED:** DAVID M ELLIS
MARY L ELLIS

**POLICY NUMBER:** OK7025753

| ITEM NO. | Category | DESCRIPTION OF SCHEDULED ITEM | INSURED AMT. |
|---|---|---|---|
| 15 | A* | HUDSON DECORATED VASE, SIGNED PILLSBURY | $ 1,150 |
| 16 | A* | HUDSON PERFECTO SIGNED PILLSBURY | 1,250 |
| 17 | A* | ROSEVILLE BLACKBERRY VASE | 536 |
| 18 | A* | WELLER FLEMISH PLANTER | 275 |
| 19 | A* | ROSEVILLE SUNFLOWER VASE | 1,200 |
| 20 | F | NATURAL RANCH MINK 48" COAT W/MONOGRAM | 7,500 |
| 21 | V | LDYS 14K WG DIAMOND DINNER RING 2/14 SGL CUT | 6,059 |
| 22 | V | LDS 14K YG STERLING PIERCED EARRINGS OVAL CUT | 48 |
| 23 | V | LDS 14K MOSAIC OPAL PIERCED EARRINGS | 159 |
| 24 | V | LDS STERLING & 18K VERNEIL STYLE COLLAR NECKLACE | 737 |
| 25 | V | LDYS STERLING & 18K VERNEIL STYLE PIERCED EARRINGS | 365 |
| 26 | V | LDYS 15" STRAND OF 5.5MM CULTURED PEARLS | 689 |
| 27 | V | LDYS 14K YG BAROUQUE CULTURED PEARL EARRINGS | 53 |
| 28 | V | LDS 14K YG KDAIMOND PIERCED EARRINGS CONTAINING 2 IDEAL CUT DIAMONDS .76 CT | 2,851 |
| 29 | V | LDS 18K YG DIAMOND EARRING JACKETS W/10 DIAMONDS | 790 |
| 30 | V | LDS 14K CYMA WATCH W/LEATHER STRAP | 495 |
| 31 | V | LDS 14K YG DIAMOND PENDANT W/PEARL ENHANCER | 1,375 |
| 32 | V | 14K YG 18" FOXTAIL CHAIN W/CURVED SOLID FANCY CTR | 695 |
| 33 | V | GENTS 18K YG PRESIDENT OYSTER ROLEX WATCH | 12,250 |
| 34 | V | LDS EBBEL WATCH WITH DIAMONDS | 4,000 |
| 35 | V | LDS SAPPHIRE 2.44CT WT & 6 DIAMOND .48 CT RING | 9,480 |
| 36 | V | LDS DIAMOND EARRINGS .97 CT TW | 1,500 |
| 37 | V | LDS 18K YG & PLATINUM RND DIAMOND NECKLACE | 16,000 |
| 38 | V | LDS 14K DIAMOND PIERCED EARRING JACKETS CONTAINING 20 DIAMONDS | 292 |
| 39 | L | DELL INSPIRON 8600 NOTEBOOK COMPUTER & ACCESSORIES | 2,700 |

A*=FINE ART ITEM WITH BREAKAGE COVERAGE

INSURED'S COPY

HOM-7011/EP 1/09

DATE PREPARED: AUG. 30 2021


A Liberty Mutual Company

## SAFECO PREMIER HOMEOWNERS POLICY

### Table of Contents

| | Beginning On Page |
|---|---|
| AGREEMENT | 1 |
| POLICY DEFINITIONS | 1 |
| SECTION I — PROPERTY COVERAGES | 4 |
| COVERAGE A — DWELLING | 4 |
| COVERAGE B — OTHER STRUCTURES | 4 |
| Building Property We Cover | |
| Building Property We Do Not Cover | |
| Building Property Losses We Cover | |
| Building Property Losses We Do Not Cover | |
| COVERAGE C — PERSONAL PROPERTY | 7 |
| Personal Property We Cover | |
| Personal Property We Do Not Cover | |
| Personal Property Losses We Cover | |
| Personal Property Losses We Do Not Cover | |
| COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT | 10 |
| ADDITIONAL PROPERTY COVERAGES | 10 |
| SECTION I — PROPERTY CONDITIONS | 15 |
| Deductible | |
| Your Duties | |
| Loss Settlement | |
| SECTION II — LIABILITY COVERAGES | 20 |
| COVERAGE E — PERSONAL LIABILITY AND | 20 |
| COVERAGE F — MEDICAL PAYMENTS TO OTHERS | 20 |
| Liability Losses We Cover | |
| Liability Losses We Do Not Cover | |
| ADDITIONAL LIABILITY COVERAGES | 25 |
| SECTION II — LIABILITY CONDITIONS | 28 |
| SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS | 30 |
| Policy Period and Changes | |
| Concealment or Fraud | |
| Liberalization Clause | |
| Cancellation | |
| Non-Renewal | |
| Assignment | |
| Our Right to Recover Payment | |
| Death | |

## INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay your premiums when due, comply with all applicable provisions outlined in this policy and inform us of any change in title, use or occupancy of the *residence premises*.

This policy applies only to losses occurring during the policy period.

## POLICY DEFINITIONS

1. Throughout this policy, "you" and "your" refer to:

   a. the "named insured" shown in your Policy Declarations; and

   if a resident of the same household:

   b. the spouse;

   c. the civil partner by civil union licensed and certified by the state; or

   d. the *domestic partner*.

2. "We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations.

3. In addition, certain words and phrases are defined as follows:

   a. "*Actual cash value*"

      (1) When damage to property is economically repairable, *actual cash value* means the cost of materials and labor needed to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

      (2) When damage to property is not economically repairable or loss prevents repair, *actual cash value* means the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

      (3) Otherwise, *actual cash value* means the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

   b. "*Annual aggregate limit*" means the amount shown in your Policy Declarations for Coverage E — Personal Liability and it is the most we will pay for the total of all offenses occurring in a policy period, or offenses of the same general nature continuing in succeeding policy periods, and regardless of the number of *insureds*, claims made or suits brought.

   c. "*Bodily injury*" means bodily harm, sickness or disease, including required care, loss of services and death that results.

   d. "*Business*" includes:

      (1) a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or

      (2) any other activity engaged in for money or other compensation, except the following:

         (a) One or more activities, not described in (b) below, for which no *insured* receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; or

         (b) *volunteer* activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

   e. "*Domestic partner*" means a person living as a continuing partner with you and:

      (1) is at least 18 years of age and competent to contract;

      (2) is not a relative; and

      (3) shares with you the responsibility for each other's welfare, evidence of which includes:

         (a) the sharing in domestic responsibilities for the maintenance of the household;

    **(b)** having joint financial obligations, resources or assets; or

    **(c)** one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

*Domestic partner* does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named *insured*.

**f.** "*Earthquake*" means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

**g.** "*Fungi*" means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or by-products produced, released by or arising out of *fungi*, including growth, proliferation or spread of *fungi* or the current or past presence of *fungi*. However, this definition does not include any *fungi* intended by the *insured* for consumption.

**h.** "*Insured*" means:

    **(1)** you; and

    **(2)** so long as you remain a resident of the *residence premises*, the following residents of the *residence premises*:

        **(a)** your relatives;

        **(b)** any other person under the age of 24 who is in the care of any person described in **(1)** or **(2)(a)** above.

    Anyone described above who is a student temporarily residing away from your *residence premises* while attending school shall be considered a resident of your *residence premises*.

Under **Section II — Liability Coverage,** "*insured*" also means:

    **(3)** with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **h.(2)(a)** or **(b)**. A person or organization using or having custody of these animals or watercraft in the course of any *business*, or without permission of the owner is not an *insured*;

    **(4)** with respect to any vehicle to which this policy applies:

        **(a)** any person while engaged in your employment or the employment of any person included in **h.(2)(a)** or **(b)**; or

        **(b)** any other person using the vehicle on an *insured location* with any *insured's* permission.

**i.** "*Insured location*" means:

    **(1)** the *residence premises*;

    **(2)** that part of any other premises, other structures and grounds, used by you as a residence and which is shown in your Policy Declarations. This includes any premises, structures and grounds you acquire during the policy period for your use as a residence;

    **(3)** any premises not owned by you which you have the right or privilege to use arising out of **i.(1)** or **i.(2)** above;

    **(4)** any part of a premises not owned by any *insured* but where any *insured* is temporarily residing;

    **(5)** vacant land, including that which is vacant except for a fence, owned by or rented to any *insured* other than farmland;

    **(6)** land owned by or rented to any *insured* on which a one, two, three or four family dwelling is being constructed as a residence for any *insured*;

    **(7)** individual or family cemetery plots or burial vaults of any *insured*; or

    **(8)** any part of a premises occasionally rented to any *insured* for other than *business* purposes.

**j.** "*Occurrence*" means an accident, including exposure to conditions which results in:

    **(1)** *bodily injury*; or

(2) *property damage*;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence*.

k.  *"Personal offense"* means injury arising out of one or more of the following offenses:

 (1) false arrest, detention or imprisonment;

 (2) malicious prosecution;

 (3) wrongful eviction or wrongful entry;

 (4) oral or written publication, in any manner, of material that slanders, libels or defames the character of a person, which occurs in any manner; or

 (5) invasion of privacy, which occurs in any manner.

l.  *"Personal watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

m.  *"Pollutants or contaminants"* means any of the following:

 (1) liquid fuels;

 (2) lead or any materials containing lead;

 (3) asbestos or any materials containing asbestos;

 (4) radon;

 (5) formaldehyde or any materials containing formaldehyde;

 (6) electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

 (7) carbon monoxide;

 (8) pathogenic or poisonous biological materials;

 (9) acids, alkalis or chemicals;

 (10) radioactive substances; or

 (11) any other irritant or contaminant, including waste, vapor, fumes or odors.

n.  *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

o.  *"Replacement cost"*

 (1) In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

 (2) In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is unavailable, *replacement cost* means the cost of a new article similar to the one damaged or destroyed and is of comparable quality and usefulness, without deduction for depreciation.

p.  *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises*, including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured*.

q.  *"Residence premises"* means:

 (1) the one, two, three or four family dwelling, used principally as a private residence;

 (2) other structures and grounds; or

 (3) that part of any other building;

where you reside and which is shown in your Policy Declarations.

**r.** *"Roof Surfacing"* means shingles or tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and roof flashing. This includes all materials and labor used in securing the roof surface and all materials applied to or under the roof surface for moisture protection.

**s.** *"Salvage"* means property having value and included in a covered loss.

**t.** *"Volunteer"* means an *insured* employed by an organization for a charitable purpose or in direct service to the general public or the community.

*Volunteer* service does not include the *insured's* primary employment. *Volunteer* service includes, but is not limited to, service performed for churches, schools, hospitals, and charitable, arts and civic organizations.

# SECTION I — PROPERTY COVERAGES

## BUILDING PROPERTY WE COVER

### COVERAGE A — DWELLING

We cover:

**1.** the dwelling on the *residence premises* shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

**2.** attached carpeting, built-in appliances, fixtures; and

**3.** materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises.*

### COVERAGE B — OTHER STRUCTURES

We cover:

**1.** fences, driveways and walkways; and

**2.** other structures on the *residence premises,* separated from the dwelling by clear space. This includes retaining walls, decorative or privacy walls and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

## BUILDING PROPERTY WE DO NOT COVER

**1.** Land, no matter where it is located, including land on which the dwelling is located, except as noted in **Additional Property Coverages, Land Stabilization**.

**2.** Other structures:

**a.** used in whole or in part for *business*; or

**b.** rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private residence or garage.

## BUILDING PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded.

## BUILDING PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by

freezing, while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you have used reasonable care to:

    **a.**   maintain heat in the building; or

    **b.**   shut off the water supply and drain the system and appliances of water.

**2.**   Freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, footing, retaining wall, decorative or privacy wall, bulkhead, pier, wharf or dock.

**3.**   Theft in, to or from a dwelling under construction, including materials and supplies for use in the construction, until or unless the dwelling is occupied. A dwelling under construction includes being newly built, remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you are occupying the dwelling as your primary residence at the time of the loss.

**4.**   Vandalism and malicious mischief, including fire caused by arson, or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling under construction, including being newly built, remodeled, reconstructed, renovated or repaired is not considered vacant.

**5.**   Continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of more than 14 days.

**6.**   **a.**   Wear and tear, marring, scratching, deterioration;

    **b.**   inherent defect, mechanical breakdown;

    **c.**   smog, rust or other corrosion, or electrolysis;

    **d.**   smoke from agricultural smudging or industrial operations;

    **e.**   settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

    **f.**   birds, vermin, rodents, insects or domestic animals, except for breakage of glass; or

    **g.**   pressure from or presence of plant roots.

However, we do insure for any resulting loss from items **1.** through **6.** unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this section. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

**7.**   **Pollution or Contamination,** meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of **pollutants or contaminants** at any time except as provided by **Additional Property Coverages — Household Products Coverage** under **Section I — Property Coverages.**

**8.**   **Ordinance or Law,** meaning any ordinance or law:

    **a.**   requiring or regulating the construction, remodeling, renovation, repair, or demolition of building property, including removal of resulting debris, unless specifically provided under this policy;

    **b.**   the requirements of which result in a loss in value to property; or

    **c.**   requiring any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants or contaminants.**

This exclusion applies whether or not the building property has been physically damaged.

**9.**   **Earth Movement,** meaning:

    **a.**   the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to **earthquake,** landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling of a river or stream;

    **b.**   erosion, shifting or displacement of materials supporting the foundation; and

    **c.**   volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

We do cover direct loss by fire, explosion or theft.

**10. Water Damage**, meaning:

    **a.**   **(1)**  flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

          **(2)**  release of water held by a dam, levee, dike or by a water or flood control device or structure;

    **b.**   water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

    **c.**   water which escapes or overflows from sewers or drains located off the *residence premises;*

    **d.**   water which escapes or overflows from drains or related plumbing appliances on the *residence premises*. However, this exclusion does not apply to overflow and escape caused by malfunction on the *residence premises,* or obstruction on the *residence premises,* of a drain or plumbing appliance on the *residence premises;* or

    **e.**   water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

Water includes any water borne materials.

This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

This exclusion does not apply to **Personal Property We Cover** that is away from a premises or location owned, rented, occupied or controlled by an *insured*.

This exclusion applies to **Personal Property We Cover** that is on a premises or location owned, rented, occupied or controlled by an *insured* even if weather conditions contribute in any way to produce the loss.

**11. Power Interruption**, meaning the failure of power or other utility service if the failure takes place off the *residence premises*. If any **Building Property Losses We Cover** ensues on the *residence premises,* we will pay only for the ensuing loss.

**12. Neglect**, meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

**13.** Loss caused directly or indirectly by war, including the following and any consequence of any of the following:

    **a.**   undeclared war, civil war, insurrection, rebellion, or revolution;

    **b.**   warlike act by a military force or military personnel; or

    **c.**   destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**14. Nuclear Hazard**, meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

**15. Intentional Loss**, meaning any loss arising out of any act committed:

    **a.**   by or at the direction of any *insured;*

    **b.**   with the intent to cause a loss.

This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy provided:

**c.** the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

**d.** the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss, less payments made pursuant to **Section I — Property Conditions, Mortgage Clause**.

**e.** For purposes of this provision, "domestic abuse" means:

    **(1)** physical harm, *bodily injury*, assault, or the infliction of fear of imminent physical harm, *bodily injury*, or assault between family or household members;

    **(2)** sexual assault of one family or household member by another;

    **(3)** stalking of one family or household member by another family or household member; or

    **(4)** intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

**16. Acts or Decisions**, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

**17. Weather** that contributes in any way with a cause or event not covered in this section to produce a loss. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

**18. Planning, Construction or Maintenance**, meaning faulty, inadequate or defective:

**a.** planning, zoning, development, surveying, siting;

**b.** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** materials used in repair, construction, renovation or remodeling; or

**d.** maintenance;

of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

**19. Fungi, Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for under **Additional Property Coverages — *Fungi,* Wet or Dry Rot, or Bacteria in Section I — Property Coverages**.

**20. Collapse**, except as provided under **Additional Property Coverages — Collapse in Section I — Property Coverages**. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

## PERSONAL PROPERTY WE COVER

## COVERAGE C — PERSONAL PROPERTY

**1.** Personal property owned or used by any *insured* is covered while it is anywhere in the world. When personal property is usually located at an *insured's* residence, other than the *residence premises,* coverage is limited to 10% of the Coverage C limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

During the time the *residence premises* is under construction by or for the *insured,* our limit of liability for personal property other than on the *residence premises* shall be equal to the amount specified for Coverage C. Our total limit shall not exceed the policy limit for Coverage C in any one loss.

**2.** At your request we cover:

**a.** personal property owned by others while the property is on that part of the *residence premises* occupied exclusively by any *insured;*

    **b.**   personal property owned by a guest or a *residence employee,* while the property is at any residence occupied by any *insured.*

**3.**   **SPECIAL LIMITS FOR PERSONAL PROPERTY**

The following groups of personal property are covered only up to the special limit shown in your Policy Declarations. The special limit is the total amount available for each group for any one loss and does not increase the Coverage C limit. The loss of, or damage to, more than one item in a group arising from the same cause or event is considered one loss.

    **a.**   Money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

    **b.**   Rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

    **c.**   Securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

    The dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

    The limit includes the cost to research, replace or restore the material from the lost or damaged medium.

    **d.**   Watercraft, including their trailers, furnishings, equipment and outboard motors.

    **e.**   Trailers not used with watercraft.

    **f.**   Theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

    **g.**   Theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

    Silverware, goldware and pewterware include:

        **(1)**   plateware, flatware, hollowware, tea sets, trays, trophies and the like;

        **(2)**   other utilitarian items made of or including silver or gold; and

        **(3)**   all items of pewterware.

    **h.**   Discs or other media in a motor vehicle or other motorized land conveyance on or away from the *residence premises.*

    **i.**   Grave markers.

    **j.**   *Business* property, not excluded elsewhere, while located on the *residence premises.* Up to $1,000 of this limit may be used for *business* property, not excluded elsewhere, while located off the *residence premises.*

---

**PERSONAL PROPERTY WE DO NOT COVER**

**1.**   Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

**2.**   Animals, birds or fish.

**3.**   Motorized land vehicles including their equipment, parts and accessories while in or upon the vehicle.

    However, we do cover:

    **a.**   motorized land vehicles used solely to service a residence and not subject to motor vehicle registration or licensed for road use;

    **b.**   vehicles designed for the disabled and not licensed for road use;

    **c.**   up to $10,000 for disassembled parts of a motorized land vehicle while located on or off the *residence premises;*

   **d.** up to $10,000 for electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

   **e.** up to $10,000 for golf carts.

**4.** Electronic devices, including their accessories and antennas, designed to be operated solely by power from the electrical system of a motor vehicle. This exclusion applies only while such property is in or upon a motor vehicle.

**5.** Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**6.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

**7.** Property of roomers, boarders, tenants and other residents not related to any *insured*.

**8.** Property in a location on the *residence premises*, when the location is rented to others by any *insured* for more than 31 days in a calendar year. This exclusion does not apply to property of an *insured* in a sleeping room rented to others by an *insured* on the *residence premises*.

**9.** Property, away from the *residence premises*, rented or held for rental to others.

**10.** *Business* merchandise:

   **a.** in storage;

   **b.** held as a sample; or

   **c.** held for sale or delivery after sale.

**11.** *Business* documents, records or data regardless of the medium on which they exist. However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

## PERSONAL PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in **Personal Property We Cover Coverage C — Personal Property** except as limited or excluded under **Personal Property Losses We Do Not Cover**.

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover**. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

In addition, we do not insure loss caused directly or indirectly by any of the following excluded perils:

**1.** Breakage of eyeglasses, glassware, statuary, sculptures, objects made from marble, porcelain, ceramics, china and crystal. However, jewelry, watches, bronzes, cameras and photographic lenses are covered. There is coverage for breakage of the above described personal property which is caused by or results from:

   **a.** fire, lightning, windstorm, hail;

   **b.** smoke, other than smoke from agricultural smudging or industrial operations;

   **c.** explosion, riot, civil commotion;

   **d.** aircraft, vehicles, vandalism and malicious mischief not otherwise excluded or volcanic eruption;

   **e.** collapse of a building or any part of a building;

   **f.** water not otherwise excluded;

   **g.** theft or attempted theft; or



    **h.**   sudden and accidental tearing apart, cracking, burning or bulging of:

        **(1)**   a steam or hot water heating system;

        **(2)**   an air conditioning or automatic fire protective sprinkler system; or

        **(3)**   an appliance for heating water.

**2.**   Dampness of atmosphere.

**3.**   Refinishing, renovating or repairing property other than watches, jewelry and furs;

**4.**   Sinking, swamping, stranding, or collision, other than collision with a land vehicle, of watercraft, including their trailers, furnishings, equipment and outboard motors.

**5.**   Destruction, confiscation or seizure by order of any government or public authority.

---

## COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT

**1.**   If a loss covered under this section makes that part of the *residence premises* where you reside uninhabitable, we cover **Additional Living Expense**, meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

    Payment shall be for the shortest time required, not exceeding 24 months, to repair or replace the damage or to permanently relocate.

**2.**   If a loss covered under this section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover your loss of rent, meaning the rental income to you from that part of the *residence premises* you rent to others at the time of the loss, less any expenses that do not continue while the premises is uninhabitable.

    This coverage does not apply to:

    **a.**   the *residence premises* or that part of the *insured location* that is not rented or leased to a tenant at the time of the loss; or

    **b.**   to any increase in rent or lease payment that occurs after the time of the loss.

    Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

**3.**   If a civil authority prohibits you from use of the *residence premises* as a result of direct damage to neighboring premises by a cause of loss we cover in this policy, we cover the Additional Living Expense as provided under **1.** above, for no more than two weeks during which use is prohibited.

The total limit of liability available for **Additional Living Expense and Loss of Rent** is shown in your Policy Declarations and is the most we will pay for all loss or costs under **1.**, **2.** and **3.**, above.

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

---

## ADDITIONAL PROPERTY COVERAGES

The following Additional Property Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

**1.**   **Debris Removal.** We will pay the reasonable expense you incur in the removal of:

    **a.**   debris of covered property provided coverage is afforded for the peril causing the loss; or

    **b.**   ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit

of liability for the damaged property, an additional 10% of that limit of liability will be available to cover debris removal expense.

We will also pay the reasonable expenses you incur, up to $10,000, for the removal of trees from the **residence premises**. No more than $5,000 of this limit will be paid for the removal of any one tree.

2. **Reasonable Repairs**. We will pay up to the amount shown in your Policy Declarations for the reasonable cost you incur for necessary measures taken solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants**. We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief, and Theft.

We will pay up to 10% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns. No more than $10,000 of this limit will be available for any one tree, shrub or plant.

We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge**. We will pay, up to the amount shown in your Policy Declarations, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Property Removed**. We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Land Stabilization**. We will pay up to the amount shown in your Policy Declarations for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

7. **Building Ordinance or Law Coverage**. We will pay for damage to **Building Property We Cover** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.

This coverage does not apply unless you choose to repair or rebuild your property at its present location.

We do not cover:

   a. the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   b. the costs to comply with any ordinance which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants or contaminants**. However, for purposes of **Building Ordinance or Law Coverage**, **pollutants or contaminants** shall not include asbestos or materials containing asbestos or lead.

You may use all or part of this **Building Ordinance or Law Coverage** to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

The limit of liability shown in your Policy Declarations is the most we will pay for the total of all loss or costs for **Building Property We Cover**, regardless of the number of locations or number of claims made.

This is an additional amount of insurance.

8. **Arson Reward**. We will pay up to the amount shown in your Policy Declarations for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable.

However, we will not pay more than the amount shown in your Policy Declarations per event regardless of the number of persons providing information.

9.  **Household Products Coverage**. We cover direct physical loss to the property described in Coverages A, B and C arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products on the *residence premises*. Household products include items currently in use or your possession at the *residence premises* in normal household quantities such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

    We will pay up to 5% of the Coverage A limit of liability shown in your Policy Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

    This coverage does not apply to:

    a.  any fee, assessment or expense of any governmental authority;

    b.  loss arising out of household products possessed or used:

        (1) for *business* purposes;

        (2) for illegal purposes;

        (3) by contractors; or

        (4) on driveways or walkways.

    **Pollution or Contamination** under **Section I — Building Property Losses We Do Not Cover** does not apply to this **Additional Property Coverage**.

    In the event that a loss is covered under both this coverage and **Additional Property Coverages — Building Ordinance or Law Coverage**, you may elect either one of these coverages, but not both.

10. **Fungi, Wet or Dry Rot, or Bacteria**. We will pay up to the amount shown in your Policy Declarations for:

    a.  the direct physical loss to covered property caused by *fungi*, wet or dry rot, or bacteria;

    b.  the cost to remove *fungi*, wet or dry rot, or bacteria from covered property;

    c.  the cost to tear out and replace any part of the building or other covered property as needed to gain access to the *fungi*, wet or dry rot, or bacteria;

    d.  the cost of any testing of air or property to confirm the absence, presence or level of *fungi*, wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *fungi*, wet or dry rot, or bacteria; and

    e.  **Coverage D — Additional Living Expense and Loss of Rent**.

    This coverage, **Fungi, Wet or Dry Rot, or Bacteria**, only applies when such loss or costs:

    f.  are a result of a loss we cover that occurs during the policy period;

    g.  are not excluded under **Building Property Losses We Do Not Cover**; and

    h.  only if all reasonable means are used to save and preserve the property from further damage.

    This coverage does not apply to loss to trees, shrubs, or other plants.

    The limit of liability shown in your Policy Declarations for **Fungi, Wet or Dry Rot, or Bacteria** is the most we will pay for the total of all loss or costs for Coverages A, B, C and D, and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

11. **Collapse**.

    a.  With respect to this coverage collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose:

        (1) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

        (2) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(3) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

(1) The perils under **Building Property Losses We Cover**;

(2) Decay that is hidden from view, unless the presence of such decay is known to an **insured** prior to collapse or there are visible signs of water damage and the **insured** has not taken prompt action to prevent further damage;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an **insured** prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

This coverage does not increase the limit of liability that applies to the damaged covered property.

**12. Criminal Conviction Reward.**

**a.** We will pay the amount shown in your Policy Declarations to an eligible person for information leading to the arrest and conviction of the person(s) committing a crime resulting in loss to covered property; and

**b.** We will pay up to the amount shown in your Policy Declarations to an eligible person for the return of stolen covered property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

(1) *actual cash value* of the stolen property at the time the property is returned, but not more than the amount that would have been required to repair or replace; or

(2) the amount determined by the loss settlement procedure applicable to the property returned had the property not been recovered.

**c.** This coverage applies subject to the following conditions:

(1) An eligible person means that person identified by a law enforcement agency as being the first to provide the necessary information or return the stolen property, and who is not:

   (a) an **insured**;

   (b) a relative of an **insured**;

   (c) an employee of a law enforcement agency;

   (d) an employee of a **business** engaged in property protection;

   (e) any person who had custody of the property at the time the theft was committed; or

   (f) any person involved in the crime.

(2) No reward will be paid unless and until the person(s) committing the crime is (are) convicted or the property returned. The amount of the reward in items a. and **b.** above is the most we will pay for any one loss to an eligible person.

**13. Locks.** We will pay the reasonable expenses you incur to re-key the locks on all entrances to the dwelling or other structure located on the *residence premises*, when the keys to those locks are lost or stolen. No deductible applies to this coverage.

0000072DEBDEV417655552201

This coverage includes the cost to replace an automatic garage door transmitter(s), and the cost to change the frequency of the garage door control unit and/or additional transmitters if:

**a.** The control unit is on the part of the *residence premises* where you reside; and

**b.** It is likely the corresponding transmitters have been lost or stolen.

This coverage does not apply to a dwelling under construction, renovation or remodeling.

**14. Golf Cart Collision**. We cover accidental direct physical loss to any golf cart to which **Personal Property We Cover** under this policy applies caused by upset or impact with another vehicle or object.

**15. Volunteer America**. We insure for all risks of accidental and direct physical loss to the property described in **Coverage C — Personal Property**, when the loss occurs as a direct result of acting as a *volunteer*.

No deductible applies to this coverage.

**16. Mortgage Acquisition Expense Coverage**. In the event of a total loss of the dwelling shown in your Policy Declarations by a covered cause of loss, we will pay necessary expenses and fees toward the acquisition of a new first mortgage to repair or replace the insured dwelling, up to a maximum of $5,000.

No deductible applies to this coverage.

This is an additional amount of coverage.

**17. Refrigerated Spoilage**. We cover up to $1,000 for any one loss to covered property stored in freezers or refrigerators on the *residence premises* for accidental direct loss caused by:

**a.** the fluctuation or total interruption of power or other utility service, whether the interruption occurs on or off the *residence premises*; or

**b.** mechanical failure of the unit storing the property, including the blowing of fuses or circuit breakers.

Interruption of power or mechanical failure shall not include removal of a plug from an electrical outlet or turning off an electrical switch unless resulting from a loss we cover.

This coverage is subject to a $100 deductible.

For purposes of this additional coverage, **Power Interruption** under **Building Property Losses We Do Not Cover** in your policy does not apply.

**18. Kidnap/Ransom Negotiation Expenses**. We will pay up to $100,000 for ransom negotiation expenses incurred by you as a result of the kidnapping of an *insured*. We will also pay up to $5,000 to any person or organization for information leading to the arrest and conviction of any person(s) who kidnaps an *insured*. This coverage does not apply to the kidnapping of a child by the child's parent. This coverage also does not apply unless:

**a.** the kidnapping occurred in the contiguous continental United States, Alaska or Hawaii; and

**b.** you have notified the Federal Bureau of Investigation or other law enforcement agency having jurisdiction over the kidnapping, and have complied with their recommendations and instructions.

**c.** "Kidnap/Ransom Negotiation Expenses" means reasonable fees and expenses of independent negotiators, and reasonable costs of travel, communications and accommodations incurred by you.

Kidnap/Ransom Negotiation Expenses does not include the ransom.

**19. Escape of Water from a Sump, Sump Pump or Drain on the Residence Premises**.

**a.** EXTENSION OF COVERAGE

We cover accidental direct physical loss to property covered under Section I — Property Coverages caused solely by water that escapes, overflows or discharges from a sump, sump pump, sump pump well or a drain or related plumbing appliance located on the *residence premises*.

For purposes of coverage under this EXTENSION OF COVERAGE, a drain or related plumbing appliance does not include a roof drain, gutter, downspout or similar fixture or equipment.

To the extent coverage is provided by this EXTENSION OF COVERAGE and up to the limit of liability applicable to the damaged property, **Section I — Building Property Losses We Do Not Cover**, Water Damage, **10.d.** and **10.e.** do not apply

**b.** **Special Exclusion**

There shall be no coverage under this EXTENSION OF COVERAGE if water excluded under **Section I — Building Property Losses We Do Not Cover, Water Damage, 10.a., 10.b.** and **10.c.**:

**(1)** is concurrent with, in sequence with, or causes or contributes to the escape of water as described in this EXTENSION OF COVERAGE; and

**(2)** damages property covered under **Section I — Property Coverages** by other than solely by escape, overflow or discharge from a sump, sump pump, sump pump well or a drain or related plumbing appliance on the *residence premises*.

This coverage does not increase the limit of liability that applies to the damaged covered property.

**20. Matching of Undamaged Siding, Roof Surfacing, and/or Windows**

We will pay, up to the amount shown in your Policy Declarations, for the cost you incur to replace the existing undamaged siding, *roof surfacing,* and/or windows due to mismatch between the existing undamaged siding, *roof surfacing,* and/or windows on the dwelling or other structure(s) which sustained the loss creating the mismatch.

This coverage only applies:

**a.** if the siding, *roof surfacing,* and/or windows on the dwelling or other structure(s) is damaged by a peril not excluded under **Building Property Losses We Do Not Cover;** and

**b.** if the replacement siding, *roof surfacing,* and/or windows do not match the existing undamaged siding, *roof surfacing,* and/or windows; and

**c.** if the mismatch is due to:

**(1)** fading, weathering, oxidizing, or color of materials;

**(2)** texture or dimensional differences; or

**(3)** obsolescence or unavailability of the siding, *roof surfacing* materials, and/or windows;

In addition, coverage only applies to undamaged siding, *roof surfacing,* and/or windows on the dwelling and/or other structure(s) that sustained the damage.

**SPECIAL CONDITIONS**

When undamaged siding, *roof surfacing,* and/or windows are replaced due to a mismatch as part of a covered loss, we will pay to replace with materials that are substantially similar to the materials used to repair or replace the damaged exterior siding, *roof surfacing,* and/or windows so there is a reasonably uniform appearance with the repair of the damaged areas.

**LIMIT OF LIABILITY**

The limit of liability shown in your Policy Declarations for **Matching of Undamaged Siding,** *Roof Surfacing,* **and/or Windows** does not increase the limits of liability under Coverage A or Coverage B and is the most we will pay for the total of all loss or costs during the policy period regardless of the number of locations insured under this policy or the number of losses or claims made.

## SECTION I — PROPERTY CONDITIONS

**1.** **Section I — Deductible.** Unless otherwise stated in this policy, we cover only that part of the loss over the applicable deductible shown in your Policy Declarations.

The deductible does not apply to **Coverage D — Additional Living Expense and Loss of Rent** or Fire **Department Service Charge.**

**2.** **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility, we will suggest annual changes to your policy limits. These suggestions will be made effective on the renewal of your policy and will be based on information provided to us by you or your agent about your dwelling's features and may be supplemented by public record or inspection. Labor and material cost

trends for your area supplied to us by recognized residential construction cost specialists will be included. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

**3.    An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

**a.**    cooperate with us in the investigation, settlement or defense of any claim or suit;

**b.**    give immediate notice to us or our agent;

**c.**    notify the police in case of loss by theft;

**d.**    protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

**e.**    prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, purchase price and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

**f.**    as often as we reasonably require:

  **(1)**    exhibit the damaged and undamaged property;

  **(2)**    provide us with records and documents we request and permit us to make copies; and

  **(3)**    submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse, civil or *domestic partner*, or any other *insured*. You shall not interfere with us examining any other *insured*.

**g.**    submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

  **(1)**    the time and cause of loss;

  **(2)**    interest of the *insured* and all others in the property involved and all encumbrances on the property;

  **(3)**    other insurance which may cover the loss;

  **(4)**    changes in title or occupancy of the property during the term of the policy;

  **(5)**    specifications of any damaged building and detailed repair estimates;

  **(6)**    an inventory of damaged personal property described in 3.e.;

  **(7)**    receipts for additional living expenses incurred or records supporting the loss of rent.

**4.    Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**a.**    for more than the amount of the *insured's* interest at the time of loss; or

**b.**    for more than the applicable limit of liability,

whichever is less.

**5.    Loss Settlement.** Covered property losses are settled as follows:

**a.**    **Replacement Cost.** Property under Coverage A, B or C, including fences, at *replacement cost,* but not including those items listed in **b. Actual Cash Value** below, and subject to the following:

  **(1)**    We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

    **(a)**    the limit of liability under the policy applying to Coverage A, B or C;

    **(b)**    the *replacement cost* of that part of the damaged building or fence for equivalent construction and use on the same premises as determined shortly following the loss;

    **(c)**    the *replacement cost* of the personal property or any part;

    **(d)**    the full amount actually and necessarily incurred to repair or replace the damaged building or fence as determined shortly following the loss;

    **(e)** The full amount actually and necessarily incurred to repair or replace the personal property or any part;

    **(f)** the direct financial loss you incur; or

    **(g)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

**(2)** **Extended Dwelling Coverage.** We will settle covered losses to the dwelling described in Coverage A up to an additional 100% of the limit of liability shown in the Declarations for Coverage A provided you:

    **(a)** insure the dwelling to 100% of its *replacement cost* as agreed by us;

    **(b)** accept any yearly adjustments by us of Coverage A reflecting changes in the cost of construction for the area;

    **(c)** notify us of any addition or other remodeling which increases the *replacement cost* of the dwelling $5,000 or more within 180 days of the start of construction; and

    **(d)** repair or replace the damaged dwelling.

If you fail to comply with any of the above provisions, the limit of liability shown in your Policy Declarations for Coverage A shall apply.

From time to time we may make requests of you for updated dwelling information. If you fail to provide the information, or if we disagree on *replacement cost*, we may delete **Extended Dwelling Coverage** effective at policy renewal.

**(3)** When more than one layer of siding or roofing exists for **Building Property We Cover**, we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

When more than one layer of finished flooring exists we will pay for the finish of only one layer.

**(4)** For **Building Property We Cover**, if the cost to repair or replace is $2,500 or more, we will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced.

For **Personal Property We Cover,** including awnings, carpeting, non-built-in appliances and outdoor antennas or outdoor equipment, whether or not attached to buildings, we will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

**(5)** You may disregard the *replacement cost* loss settlement provisions and make claim under this policy on an *actual cash value* basis but not exceeding the smallest of the following amounts:

    **(a)** the applicable limit of liability;

    **(b)** the direct financial loss you incur; or

    **(c)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

You may still make claim on a *replacement cost* basis by notifying us of your intent to do so within 180 days after the date of loss.

**(6)** If you have a covered total loss to your dwelling, we will pay the limit of liability shown in your Policy Declarations for Coverage A whether or not you actually repair, replace or rebuild.

If you have a covered total loss to a permanent other structure(s), we will pay the *replacement cost* of the damaged structure(s) under Coverage B whether or not you actually repair, replace or rebuild, but not more than the Coverage B limit of liability shown in your Policy Declarations. The Coverage B limit of liability as shown in the Policy Declaration is the most we will pay regardless of the number of structures, locations or number of claims made.

If there is any other valid and collectible insurance applying to the covered property at the time of loss, we will pay only our pro rata share of the loss.

**b. Actual Cash Value**.

    (1)  The following property:

        **(a)**  antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

        **(b)**  memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value;

        **(c)**  personal property not maintained in good or workable condition;

        **(d)**  personal property that is outdated or obsolete and is stored or not being used;

        **(e)**  property not owned by any *insured*; and

        **(f)**  motorized land vehicles or earth moving or excavating equipment used to service the *residence premises*;

    (2)  Wood fences; and

    (3)  Structures that are not buildings under Coverage B, except driveways, walkways and other structures connected to the building by only a fence, utility line, plumbing or similar connection;

at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

**c.**  We will not pay for the cost to replace and/or match any undamaged siding, *roof surfacing* and/or windows due to any mismatch between the existing undamaged siding, *roof surfacing* and/or windows on a covered dwelling or other structure and any new materials used to repair or replace the damaged siding, roof and/or windows on a covered dwelling or other structure because of:

    (1)  wear and tear, marring, scratching or deterioration;

    (2)  fading, weathering, oxidizing or color;

    (3)  texture or dimensional differences;

    (4)  obsolescence or unavailability of materials; or

    (5)  inherent vice, latent defect, mechanical breakdown.

To the extent coverage is provided under **Additional Property Coverages - Matching of Undamaged Siding, Roof Surfacing, and/or Windows** in **Section I — Property Coverages**, items **c.(2)** through **c.(4)** do not apply.

**d.**  We will not pay for any loss in value of property, whether actual or perceived, or any;

    (1)  adverse impact on the ownership of, or transfer of ownership or title of property; or

    (2)  adverse impact on the acquisition of financing resulting from the covered physical damage to the property. The application of this provision **(2)** does not apply to the extent coverage is provided for **Mortgage Acquisition Expense**.

**6.**  **Loss to a Pair or Set**. In case of loss of an item belonging to a pair or set, at your option, we will pay:

  **a.**  repair or replace any part to restore the pair or set to its value before the loss; or

  **b.**  pay the *replacement cost* of the pair or set. If you elect *replacement cost*, the pair or set becomes our property.

**7.**  **Appraisal**. If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost*, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the county in which the property covered is located. The appraisers shall then appraise the loss, stating separately the *actual cash value* and *replacement cost* of each item, and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

  **a.**  pay its own appraiser; and

    **b.**   bear the other expenses of the appraisal and umpire equally.

In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

**8.**   **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

**9.**   **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

**10.**  **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

    **a.**   we reach agreement with you;

    **b.**   there is an entry of a final judgment; or

    **c.**   there is a filing of an appraisal award with us.

**11.**  **Abandonment of Property.** We need not accept any property abandoned by any *insured*.

**12.**  **Mortgage Clause.**

The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    **a.**   notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    **b.**   pays any premium due under this policy on demand if you have neglected to pay the premium;

    **c.**   submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

    **d.**   complies with item 3.e. of **Section I — Property Conditions**.

Policy conditions relating to **Appraisal, Suit Against Us** and **Loss Payment** apply to the mortgagee. If the policy is canceled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or non-renewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

    **e.**   we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    **f.**   at our option, we shall receive full or partial assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt as our payment, including any accrued interest, as it bears to the amount of the principal on the mortgage.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13.**  **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**14.**  **Other Insurance and Service Agreements.** If a loss covered by this policy is also covered by:

    **a.**   other insurance, we will pay only the proportion of the loss caused by a peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the loss; or

    **b.**   a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement includes a service plan, property restoration plan or warranty, even if it is characterized as insurance.

**15.**  **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by

you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Salvage Value**. Any value that may be realized from *salvage* will not diminish the amount of your deductible. We need not accept, but have all rights to *salvage*.

17. **Volcanic Eruption Period**. One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

---

## SECTION II — LIABILITY COVERAGES

---

**LIABILITY LOSSES WE COVER**

**COVERAGE E — PERSONAL LIABILITY**

If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and

2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

---

**COVERAGE F — MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees*. As to others, this coverage applies only:

1. to a person on the *insured location* with the permission of any *insured*; or

2. to a person off the *insured location*, if the *bodily injury*:

    a. arises out of a condition on the *insured location* or the ways immediately adjoining;

    b. is caused by the activities of any *insured*;

    c. is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured*; or

    d. is caused by an animal owned by or in the care of any *insured*.

---

**LIABILITY LOSSES WE DO NOT COVER**

1. **Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others** do not apply to *bodily injury* or *property damage*:

    a. which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*;

    This exclusion applies even if:

    (1) such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or

    (2) such *bodily injury* or *property damage* is sustained by a different person, or persons, entity, real or personal property than expected or intended.

    This exclusion does not apply to *bodily injury* resulting from the use of reasonable force by any *insured* to protect persons or property.

    b. which results from violation of criminal law committed by, or with the knowledge or consent of any *insured*.

This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

**c.** arising out of *business* pursuits of any *insured*.

This exclusion does not apply to:

**(1)** activities which are ordinarily incidental to non-*business* pursuits;

**(2)** the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

**(3)** the rental or holding for rental of any part of the *residence premises*:

**(a)** on an occasional basis for the exclusive use as a residence;

**(b)** in part, unless intended for use as a residence by more than two roomers or boarders; or

**(c)** in part, as an office, school, studio or private garage;

**d.** arising out of the rendering or failing to render professional services;

**e.** arising out of any premises owned or rented to any *insured* which is not an *insured location*;

**f.** arising out of the ownership, maintenance, use, loading or unloading of:

**(1)** aircraft.

This does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**(2)** motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any *insured*.

This exclusion does not apply to:

**(a)** a trailer not towed by or carried on a motorized land vehicle;

**(b)** a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

**i.** not owned by any *insured*; or

**ii.** owned by any *insured*, while on an *insured location*;

**(c)** a motorized golf cart which is owned by any *insured*, designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and at the time of an *occurrence* is within the legal boundaries of:

**i.** a golfing facility and is parked or stored there, or being used by an *insured* to:

**(i)** play the game of golf or for other recreational or leisure activity allowed by the facility;

**(ii)** travel to or from an area where motor vehicles or golf carts are parked or stored; or

**(iii)** cross public roads at designated points to access other parts of the golfing facility; or

**ii.** a private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains any *insured's* residence;

**(d)** a motorized land vehicle used solely for assisting the disabled or solely for the maintenance of a residence, which is:

**i.** not designed for travel on public roads; and

**ii.** not subject to motor vehicle registration, licensing or permits;

**(e)** electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

    **(f)** a motorized land vehicle in dead storage on an *insured location*.

**(3)** watercraft:

    **(a)** owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

    **(b)** owned by or rented to any *insured* if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

    **(c)** powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any *insured*.

    However, outboard motors of 50 or more total horsepower are covered for the policy period if:

      **i.** you acquired them prior to the policy inception, and:

        **(i)** declared them at policy inception; or

        **(ii)** you ask us in writing to insure them within 45 days after you become the owner;

      **ii.** you acquire them during the policy period, provided you ask us to insure them:

        **(i)** during the policy period in which you become the owner; or

        **(ii)** within 45 days after you become the owner;

      whichever is greater, and pay any resulting additional premium from the date acquired.

    **(d)** designed as an air boat, air cushion, or similar type of craft; or

    **(e)** owned by any *insured* which is a *personal watercraft*.

This exclusion does not apply while the watercraft is stored.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

Exclusions **e.** and **f.** do not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured*;

**g.** arising out of:

    **(1)** the entrustment by any *insured* to any person;

    **(2)** the supervision by any *insured* of any person;

    **(3)** any act, decision or omission by any *insured*;

    **(4)** any liability statutorily imposed on any *insured*; or

    **(5)** any liability assumed through an unwritten or written agreement by any *insured*;

with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section II of this policy;

**h.** caused directly or indirectly by war, including the following and any consequences of the following:

    **(1)** undeclared war, civil war, insurrection, rebellion, or revolution;

    **(2)** warlike act by a military force or military personnel; or

    **(3)** destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

**i.** which results from the legal liability of any *insured* because of home care services, day care or any hospice related activity provided to any person on a regular basis by or at the direction of:

    **(1)** any *insured*;

    **(2)** any employee of any *insured*;

    **(3)** any other person actually or apparently acting on behalf of any *insured*.

Regular basis means more than 20 hours per week.

This exclusion does not apply to:

    (4)  home care services provided to the relatives of any *insured*;

    (5)  occasional or part-time home care services provided by any *insured* under 23 years of age;

**j.**  which arises out of the transmission of a communicable disease by any *insured*;

**k.**  arising out of physical or mental abuse, sexual molestation or sexual harassment;

**l.**  arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional;

**m.**  arising out of any *insured's* participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

**2.**  **Coverage E — Personal Liability** does not apply to:

**a.**  Liability:

    (1)  for any assessment charged against you as a member of an association of property owners except as provided under **Additional Liability Coverages — Loss Assessment Coverage** in **Section II — Liability Coverages**;

    (2)  under any contract or agreement. However, this does not apply to written contracts:

        (a)  that directly relate to the ownership, maintenance or use of an *insured location*; or

        (b)  where the liability of others is assumed by the *insured* prior to an *occurrence*;

    unless excluded in 2.a.(1) above or elsewhere in this policy;

    (3)  liability arising out of any written or oral agreement for the sale or transfer of real property, including but not limited to liability for:

        (a)  known or unknown property or structural defects;

        (b)  known or hidden defects in the plumbing, heating, air conditioning or electrical systems;

        (c)  known or unknown soil conditions or drainage problems; or

        (d)  concealment or misrepresentation of any known defects;

**b.**  *property damage* to property owned by any *insured*;

**c.**  *property damage* to property rented to, occupied or used by or in the care of any *insured*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion or water;

**d.**  *bodily injury* to any person eligible to receive any benefits required to be provided or voluntarily provided by any *insured* under:

    (1)  any workers' compensation;

    (2)  non-occupational disability; or

    (3)  occupational disease law;

**e.**  *bodily injury* or *property damage* for which any *insured* under this policy is also an *insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

**f.**  *bodily injury* to an *insured* within the meaning of parts (1) or (2) of Policy Definitions, **3.h. Insured**;

**g.**  *bodily injury* or *property damage* arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion

or inhalation of *pollutants or contaminants* at any time. This includes any loss, cost or expense arising out of any:

(1) request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants or contaminants*;

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants or contaminants*;

This exclusion does not apply to *bodily injury* sustained within a building on the *residence premises* and caused by, smoke, fumes, including carbon monoxide, vapor or soot from equipment used to heat that building;

**h.** liability arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data;

**i.** liability arising out of any animal that any *insured* acquires, owns or keeps that:

(1) is of a breed or kind named by or controlled by any local, state, or federal ordinance or law because of public safety concerns;

(2) has previously inflicted injury upon any person resulting in:

(a) maiming, disfigurement, mutilation, impairment, disability or death; or

(b) loss of work, schooling, or a loss of ability to carry on with a normal routine;

(3) has been trained to fight or attack;

(4) has been trained to kill;

(5) is a wild canine or feral dog or an offspring from breeding with a wild canine;

(6) is illegal to acquire, own or keep;

(7) is wild by birth or by nature and the species is not customarily domesticated;

(8) is a bird of prey;

(9) is venomous; or

(10) is a primate.

Item **(3)** above does not apply in the event the animal is reacting to protect people or property from imminent harm.

This exclusion does not apply to any person or organization described as an *insured* in **Policy Definitions**, item **h.(3)**.

**3. Coverage F — Medical Payments to Others** does not apply to *bodily injury*:

**a.** to a *residence employee* if the *bodily injury* occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*;

**b.** to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

**c.** from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

**d.** to any person, other than a *residence employee* of any *insured*, regularly residing on any part of the *insured location*.

## ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against any *insured* in any suit we defend;

   b. premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E — Personal Liability**. We are not obligated to apply for or furnish any bond; and

   c. reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $500 per day, for assisting us in the investigation or defense of any claim or suit.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *insured*.

3. **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $10,000 per *occurrence* for *property damage* to *property* of others caused by any *insured*.

   We will not pay for *property damage*:

   a. if insurance is otherwise provided in this policy;

   b. caused intentionally by any *insured* who is 13 years of age or older;

   c. to property owned by or rented to any *insured*;

   d. to property owned by or rented to a tenant of any *insured* or a resident in your household; or

   e. arising out of:

      (1) *business* pursuits;

      (2) any act or omission in connection with a premises owned, rented or controlled by an *insured*, other than the *insured location*; or

      (3) the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles. This does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured*.

4. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to the limit shown in your Policy Declarations for:

   a. the legal obligation of an *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

   b. loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

   We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

   c. loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

   d. loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

   We do not cover loss arising out of *business* pursuits or dishonesty of any *insured*.

   Defense:

   e. We may make any investigation and settle any claim or suit that we decide is appropriate.

    **f.**   If a suit is brought against any *insured* for liability covered under this **Credit Card or Fund Transfer Card Coverage**, we will provide a defense at our expense by counsel of our choice.

    **g.**   We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

**5.**  **Statutorily Imposed Vicarious Parental Liability.**

    We will pay the lesser of:

    **a.**   the statutorily imposed limit; or

    **b.**   $3,000;

    for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

    This coverage is excess over any other valid and collectible insurance.

**6.**  **Loss Assessment.**

    **a.**   we will pay loss assessments charged during the policy period against you by the association of property owners up to the limit of liability shown in your Policy Declarations, when the assessment is made as a result of:

        **(1)**  each direct loss to property, caused by a peril that would be covered under **Section I — Property Coverages** of this policy;

        **Special Exclusion:** There is no coverage for any loss assessment resulting from the peril of *earthquake*. However, loss assessment for ensuing direct loss by fire, explosion or theft is covered.

        **(2)**  each *occurrence* to which **Section II — Liability Coverages** of this policy would apply;

        **(3)**  each *occurrence* to which **Section II — Additional Liability Coverage — Personal Offense** would apply; and

        **(4)**  liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

            **(a)**  the director, officer or trustee is elected by the members of the association of property owners; and

            **(b)**  the director, officer or trustee serves without deriving any income from the exercise of his/her duties, which are solely on behalf of the association of property owners.

    **b.**   **Deductible.** We will pay only that part of your assessment per unit for property insured under Section I that exceeds $500. No other deductible applies to this coverage. If our liability for a loss results from Section I and coverage under this option, only the larger deductible will apply.

**7.**  **Volunteer America.**

    **a.**   Under **Section II — Liability Coverages — Liability Losses We Cover — Coverage F — Medical Payments to Others**, we will pay up to double the amount shown in your Policy Declarations for *bodily injury* caused as a direct result of acting as a *volunteer*.

    **b.**   Under **Section II — Liability Coverages — Liability Losses We Do Not Cover** the following items are changed:

        **(1)**  Item **1.c.** does not apply to activities as a *volunteer*.

        **(2)**  Item **1.d.** does not apply to professional services, other than professional health care services by a doctor, performed as a *volunteer*.

    **c.**   Under **Section II — Liability Coverages — Additional Liability Coverages — Damage to Property of Others**, we will pay an additional $2,000 for physical damage caused as direct result of acting as a *volunteer*.

**8.**  **Personal Offense Coverage.**

    **a.**   If a claim is made or suit is brought against an *insured* for damages resulting from an offense defined under *personal offense* and to which this coverage applies, we will:

        **(1)**  pay up to the *annual aggregate limit* for damages for which an *insured* is legally liable; and

(2) provide a defense at our expense by counsel of our choice, even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

Our duty to settle or defend ends when our *annual aggregate limit* has been exhausted by payment of judgments or settlements.

b. **Special Exclusions**: Coverage does not apply to *personal offense*:

(1) caused by or at the direction of an *insured* with the knowledge that the act would violate the rights of another and would be a *personal offense*;

(2) arising out of oral or written communication or publication of material, if done by, or at the direction of, or with the cooperation of an *insured* with knowledge of its falsity;

(3) occurring before the beginning of the policy period;

(4) arising out of a criminal act committed by, at the direction of, or with the cooperation of an **insured** knowing of the criminal nature;

(5) arising out of liability assumed by an *insured* under any contract or agreement, except any indemnity obligation assumed by an *insured* under a written contract directly relating to the ownership, maintenance or use of the premises;

(6) sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an *insured*;

(7) arising out of or in connection with a *business* conducted by an *insured*;

This exclusion does not apply to:

(a) the rental or holding for rental of any part of the *residence premises*;

i. on an occasional basis for the exclusive use only as a residence;

ii. in part, unless intended as a residence by more than two roomers or boarders; or

iii. in part, as an office, school, studio or private garage; and

(b) the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

(8) arising out of civic or public activities performed for pay by an *insured*;

(9) sustained by you or any *insured*.

This exclusion also applies to any claim made or suit brought against you or an *insured* to:

(a) repay; or

(b) share damages with;

another person who may be obligated to pay damages arising out of any *personal offense* to an *insured*.

**Section II — Liability Coverages, Liability Losses We Do Not Cover** do not apply to *personal offense* coverage as defined above.

c. **Special Conditions. Section II — Liability Conditions, 1. Limit of Liability, 2. Severability of Insurance** and **3. Your Duties After Loss** do not apply to Personal Offense Coverage.

The following are added:

(1) **Limit of Liability.** Our total liability under this Personal Offense Coverage for all damages resulting from *personal offense* occurring in a policy period will not be more than the Limit of Liability shown in your Policy Declarations for this coverage which is an *annual aggregate limit*.

(2) **Severability of Insurance.** This insurance applies separately to each *insured* except with respect to the *annual aggregate limit*. This condition will not increase our *annual aggregate limit* for this coverage.

**(3) Your Duties After Loss.**

In the event of a covered offense, you or another *insured* will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**(a)** give written notice to us or our agent as soon as is practical, which sets forth:

    **i.** the identity of the policy and named *insured*;

    **ii.** reasonably available information on the time, place and circumstances of the offense; and

    **iii.** names and addresses of any claimants and witnesses;

**(b)** cooperate with us in the investigation, settlement or defense of any claim or suit;

**(c)** promptly forward to us every notice, demand, summons or other process relating to the offense;

**(d)** at our request, help us:

    **i.** to make settlement;

    **ii.** to enforce any right of contribution or indemnity against any person or organization who may be liable to an *insured*;

    **iii.** with the conduct of suits and attend hearings and trials; and

    **iv.** to secure and give evidence and obtain the attendance of witnesses;

**(e)** no *insured* shall, except at such *insured's* own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the *personal offense*.

---

## SECTION II — LIABILITY CONDITIONS

**1. Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage E shown in your Policy Declarations. This limit is the same regardless of the number of *insureds*, claims made or persons injured.

Our total liability under Coverage F for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage F shown in your Policy Declarations.

**2. Severability of Insurance.** This insurance applies separately to each *insured*. This condition shall not increase our limit of liability for any one *occurrence*.

**3. Your Duties After Loss.** In case of an accident or *occurrence*, the *insured* shall perform the following duties that apply:

**a.** give written notice to us or our agent as soon as practicable, which sets forth:

    **(1)** the identity of the policy and *insured*;

    **(2)** reasonably available information on the time, place and circumstances of the accident or *occurrence*;

    **(3)** names and addresses of any claimants and witnesses; and

    **(4)** in case of loss under the **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money**, also notify the credit card or fund transfer card company;

**b.** promptly forward to us every notice, demand, summons or other process relating to the accident or *occurrence*;

**c.** at our request, help us:

    **(1)** to make a settlement;

    **(2)** to enforce any right of contribution or indemnity against any person or organization who may be liable to any *insured*;

    **(3)** with the conduct of suits and attend hearings and trials;

    **(4)** to secure and give evidence and obtain the attendance of witnesses;

**d.** under the **Additional Liability Coverages — Damage to the Property of Others** — submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the *insured's* control;

**e.** submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money Coverage**, stating the amount and cause of loss;

**f.** the *insured* shall not, except at the *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury*.

**4. Duties of an Injured Person — Coverage F — Medical Payments to Others**. The injured person or someone acting for the injured person will:

    **a.** give us written proof of claim, under oath if required, as soon as practical;

    **b.** authorize us to obtain copies of medical reports and records.

The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

**5. Payment of Claim — Coverage F — Medical Payments to Others**. Payment under this coverage is not an admission of liability by any *insured* or us.

**6. Payment of Interest — Coverage E — Personal Liability**.

If a notice, demand, summons, judgment, or other process is promptly forwarded to us as required by Liability Condition **3.b.** under **Your Duties After Loss** and we accept the defense or agree to the judgment, we will pay interest on the judgment, subject to all of the following:

    **a.** We will pay the interest on that part of the judgment that is covered by this policy and that does not exceed our applicable limit of liability.

    **b.** We will pay interest that accrues on the judgment until we pay, tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

    **c.** If we appeal the judgment, we will pay interest on the entire judgment.

    **d.** Post-judgment interest is in addition to the applicable limit of liability.

    **e.** Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

**7. Suit Against Us**. No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any *insured*. Further, no action with respect to Coverage E shall be brought against us until the obligation of the *insured* has been determined by final judgment or agreement signed by us.

**8. Bankruptcy of an Insured**. Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

**9. Other Insurance — Coverage E — Personal Liability**. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

1. **Policy Period and Changes**.

   a.   The effective time of this policy is 12:01 A.M. at the *residence premises*. This policy applies only to loss under Section I, or *bodily injury* or *property damage* under Section II, which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

   b.   Changes:

   (1)   Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

   (2)   This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

2. **Concealment or Fraud**. This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made or any time during the policy period.

   We may void this policy or deny coverage for a loss or *occurrence* if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

   We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or *occurrence*. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

3. **Liberalization Clause**. If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

   This liberalization clause does not apply to changes implemented that involve a broadening and a restriction of coverage or an increase in premium.

4. **Cancellation**.

   a.   You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   b.   We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in your Policy Declarations. Proof of mailing shall be sufficient proof of notice.

   (1)   When you have not paid the premium we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

   (2)   When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

   (3)   When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued.

   This can be done by notifying you at least 15 days before the date cancellation takes effect.

   c.   When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 20 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

6. **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

7. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

   Subrogation does not apply under Section II to **Coverage F — Medical Payments to Others** or **Additional Liability Coverages, Damage to Property of Others.**

8. **Death.** If you die:

   a. we insure your legal representative, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

   b. *insured* shall include:

      (1) any member of the household who is an *insured* at the time of your death, but only while a resident of the *residence premises*; and

      (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.



# SPECIAL PROVISIONS — OHIO

## INSURING AGREEMENT

The following language is added:

The application for this policy is incorporated herein and made a part of this policy. When we refer to the policy, we mean this document, the application, the Declarations page, and any applicable endorsements. The *insured* agrees that all of the statements in the application for this policy are his or her statements and constitute warranties. The *insured* agrees that this policy is issued in reliance upon the truth of the *insured's* warranties in the application. If it is determined that any warranty made in the application is incorrect, this policy shall be void back to the date of inception upon return of the policy premium.

## SECTION I — PROPERTY CONDITIONS

Under **5. Loss Settlement**, the following is added to item **c.**:

If a replacement item(s) does not match adjacent items in quality, color, or size, we will replace all such items with materials of like kind and quality so as to conform to a reasonably uniform appearance.

Under **3. An Insured's Duties After Loss**, item **b.** is deleted and replaced by the following:

**b.** give immediate notice to us or our agent. With respect to loss caused by the peril of Windstorm or Hail, the notice must be within 365 days after the date of the loss; .

## SECTION II — LIABILITY COVERAGES

**LIABILITY LOSSES WE DO NOT COVER**

The following is added to item **1.**:

**n.** arising out of the actions of a dangerous or vicious dog, as defined under OHIO REV. CODE, Sec 955.11, and the *insured's* failure to keep:

**(1)** the dangerous dog, while on the premises of the owner, keeper or harborer, restrained by a leash or a tether;

**(2)** the vicious dog while on the premises of the owner, keeper or harborer, securely confined at all times in a locked pen that has a top, a locked fenced yard or other locked enclosure that has a top; and

**(3)** the dangerous and vicious dog while off the premises of the owner, keeper or harborer, on a chain-link leash or tether that is not more than six feet in length and in addition, keep the dog:

**(a)** confined in a locked pen that has a top, locked fenced yard or other locked enclosure that has a top;

**(b)** leashed or tethered and controlled by a person who is of suitable age and discretion or securely attach, tie or affix the leash or tether to the ground or a stationary object or fixture so that the dog is adequately restrained and station such a person in close enough proximity to that dog so as to prevent it from causing injury to any person; or

**(c)** muzzled.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*.

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

Item **2.** is deleted and replaced by the following:

**2.** **Concealment or Fraud.** This policy will not provide coverage under any part of this policy for any *insured* or any other person or entity seeking benefits under this policy (whether before or after a loss) if any *insured*:

   **a.** Conceals or misrepresents any material fact or circumstance;

   **b.** Makes false statements; or

   **c.** Engages in fraudulent conduct;

any of which relate to a loss, an accident, or a claim.

Under **4. Cancellation**, item **b.** is deleted and replaced by the following:

   **b.** We may cancel this policy, as stated below, by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Policy Declarations. Proof of mailing will be sufficient proof of notice.

     **(1)** We may cancel at any time by letting you know at least 10 days before the date cancellation takes effect if we cancel because:

       **(a)** You have not paid the premium;

       **(b)** There has been a material misrepresentation of fact related to this insurance; or

       **(c)** Evidence of arson exists.

     **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

     **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if the risk has changed substantially since the policy was issued. This can be done by letting you know at least 30 days before the date cancellation takes effect.

Item **5.** is deleted and replaced by the following:

**5.** **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

All other provisions of this policy apply.

8211X

# VALUABLE ARTICLES COVERAGE

For an additional premium, we agree to insure the groups and scheduled items of personal property listed on your **Valuable Articles Schedule, HOM-7010,** the terms of which are a part of this endorsement.

1. **COVERED CATEGORIES**

    The following categories apply as shown in your **Valuable Articles Schedule, HOM-7010**.

    a. **Category A — Fine Arts**

    b. **Category B — Cellular Phones and Other Mobile Communication Equipment\***

    c. **Category C:**

    (1) **Cameras,** projection machines, films and related equipment;

    (2) **Guns\*;**

    (3) **Postage Stamps\*,** including due, envelope, official, revenue, match and medicine stamps, covers, locals, reprints, essays, proofs, and other philatelic property, including their books, pages, and mountings, owned by or in the custody or control of the **insured;** and

    (4) **Rare and Current Coins\*,** including medals, paper money, bank notes, tokens of money, and other numismatic property, including coin albums, containers, frames, comic books, trading cards and display cabinets in use with such collection, owned by or in the custody or control of the **insured.**

    d. **Category F:**

    (1) **Furs** and garments trimmed with fur or consisting principally of fur.

    (2) **Musical instruments\*** and related articles of equipment.

    You agree not to perform with these instruments for pay; and

    (3) **Property Not Otherwise Classified\*** (Including Electronic Systems).

    e. **Category I — In Vault Jewelry\***

    There is no coverage for these items while they are out of the vault, unless we agree in advance to cover them.

    f. **Category J — Jewelry (Unscheduled)**

    g. **Category L — Computer and Media Equipment\***

    h. **Category S — Silverware,** silver-plated ware, goldware, gold-plated ware, and pewterware, as shown on your Valuable Articles Schedule, but excluding pens, pencils, flasks, smoking implements, or jewelry.

    i. **Category T — Farm Personal Property\***

    j. **Category V — Valued Jewelry (Itemized)\***

    **NOTE:** \*Group coverage is not available for these classes of property.

2. **NEWLY ACQUIRED PROPERTY (Itemized Coverage Only)**

    a. With respect to Jewelry, Furs, Cameras, Musical Instruments, Cellular Phones, and Other Electronic Equipment and Media, we cover:

    (1) 25% of the amount of insurance for that category of property; or

    (2) $10,000;

    whichever is less for newly acquired items.

    For coverage to apply for this newly acquired property, the **insured** must:

    (3) report this newly acquired property to us within 30 days of acquisition; and

    (4) pay the additional premium from the dated acquired.

    b. With respect to Fine Arts, we cover objects of art acquired during the policy period for their **actual cash value.** However, we will pay no more than 25% of the amount of insurance for scheduled fine arts.

For coverage to apply for newly acquired Fine Arts, the **insured** must:

    (1)  report this newly acquired property to us within 90 days of acquisition; and

    (2)  pay the additional premium from the dated acquired.

**3.  LOSSES WE COVER**

We cover accidental direct physical loss to the property described, except as limited or excluded.

**4.  LOSSES WE DO NOT COVER**

  **a.**  We do not cover loss caused by any of the following:

    (1)  wear and tear or gradual deterioration.

    (2)  insects or vermin.

    (3)  loss caused directly or indirectly by war, including the following and any consequence of any of the following:

        (a)  undeclared war, civil war, insurrection, rebellion, or revolution;

        (b)  warlike act by a military force or military personnel; or

        (c)  destruction or seizure or use for a military purpose.

        Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

    **(4)  Nuclear Hazard, to the extent set forth in Nuclear Hazard, Section I — Building Property or Personal Property Losses We Do Not Cover.**

    (5)  If Fine Arts are covered:

        (a)  Damage caused by any repairing, restoration, or retouching process;

        (b)  Breakage of art glass windows, glassware, statuary, marble, bric-a-brac, porcelains, and similar fragile articles.

            We cover loss by breakage if caused by fire, lightning, aircraft, windstorm, malicious damage, theft, explosion, earthquake, flood, or collision, derailment, or overturn of conveyance.

        (c)  Loss to property on exhibition at fair grounds or premises of national or international expositions.

        However, item a.(5)(b) above does not apply if coverage for breakage is purchased and shown on your **Valuable Articles Schedule, HOM-7010.**

    (6)  If Postage Stamps or Rare and Current Coins, Trading Cards, or Comic Books are covered:

        (a)  Fading, creasing, denting, scratching, tearing, thinning, transfer of colors, inherent defect, dampness, extremes of temperature, gradual depreciation, or any damage from handling or being worked upon.

        (b)  Disappearance of individual stamps, coins, or other articles unless the item is described and scheduled with a specific amount of insurance, or if the item is mounted in a volume and the page to which it is attached is also lost.

        (c)  Loss to property in the custody of transportation companies or shipments by mail other than registered mail.

        (d)  Loss to property which is not an actual part of a stamp or coin collection.

    (7)  Loss to guns caused by internal explosion, rust, fouling, marring, or scratching.

    (8)  Loss to sports or golfer's equipment or guns:

        (a)  caused by any process of refinishing, renovating, or repairing;

        (b)  dampness of atmosphere and/or extremes of temperature;

        (c)  inherent defect or faulty manufacture;

        (d)  caused by breakage, marring, scratching, tearing, or denting, unless caused by fire, theft, or accidents to conveyances.

**(9)** If golfer's equipment is covered, golf balls are covered only for loss by fire or burglary, provided, if burglary, there are visible marks of forcible entry into the building, room, or locker.

**(10)** Loss to Electronic Equipment and Media:

    **(a)** caused by mechanical or machinery breakdown or failure;

    **(b)** caused by any change in electric power supply if the change originates outside of the *residence premises* except by lightning;

    **(c)** caused by short circuit or other electrical or magnetic injury, disturbance, or erasure of electronic data;

    **(d)** caused by design, specifications, workmanship, programming, manufacture, repair, materials used in repair, refurbishing, maintenance, or the resulting failure to function; unless fire or explosion ensues and then only for loss to the insured property caused by the ensuing fire or explosion;

    **(e)** caused by delay, loss of market, loss of use, or interruption of business; or

    **(f)** consequential loss of any nature.

**5. TERRITORIAL LIMITS**

We cover the property described while it is anywhere in the world except Fine Arts are covered only while within the limits of the continental United States, the state of Hawaii, and Canada.

**6. CONDITIONS**

**a. Loss Clause:** The amount of insurance under this option shall not be reduced except for a total loss of a scheduled article. We will refund the unearned premium applicable to such article after the loss or you may apply it to the premium due for the replacement of the scheduled article.

**b. Loss Settlement — Itemized Coverage:**

Covered property losses are settled as follows:

**(1) Fine Arts** — We will pay the amount shown for each scheduled article which is agreed to be the value of the article.

In case of loss to a pair or set, we agree to pay you the full amount of the set as shown in the schedule and you agree to surrender the remaining article or articles of the set to us.

You agree that the covered property will be packed and unpacked by competent packers.

**(2) Jewelry** — We will pay the amount shown for each scheduled article which is agreed to be the value of the article and shown as Category V on your Valuable Articles Schedule, HOM-7010.

In case of loss to a pair or set, we agree to pay you the full amount of the set as shown in the schedule and you agree to surrender the remaining article or articles of the set to us.

**(3) Other Property** — The value of the property insured is not agreed upon but shall be ascertained at the time of loss or damage.

    **(a)** We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

        **i.** the limit of liability of this policy applicable to the damaged, destroyed, or stolen property;

        **ii.** the *replacement cost* of the property or any part;

        **iii.** the full amount actually and necessarily incurred by the *insured* in repairing or replacing the property or any part;

        **iv.** the direct financial loss you incur; or

        **v.** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

    **(b)** We will pay the difference between *actual cash value* and *replacement cost* only when the damaged, destroyed, or stolen property is repaired or replaced.

    **(c)** You may disregard the *replacement cost* loss settlement provisions and make a claim for loss on an *actual cash value* basis. You may still make a claim for any

0000072DEBDEV417655552213

additional liability under *replacement cost* by notifying us of your intent to do so within 180 days after the date of loss.

**c.** **Loss Settlement — Group (Unscheduled) Coverage:**

Covered property losses are settled as follows:

The value of the property insured is not agreed upon but shall be ascertained at the time of loss or damage.

**(1)** We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

    **(a)** the limit of liability of this policy applicable to the damaged, destroyed, or stolen property;

    **(b)** the *replacement cost* of the property or any part;

    **(c)** the full amount actually and necessarily incurred by the *insured* in repairing or replacing the property or any part;

    **(d)** the direct financial loss you incur; or

    **(e)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

**(2)** We will pay the difference between *actual cash value* and *replacement cost* only when the damaged, destroyed, or stolen property is repaired or replaced.

**(3)** You may disregard the *replacement cost* loss settlement provisions and make a claim for loss on an *actual cash value* basis. You may still make a claim for any additional liability under *replacement cost* by notifying us of your intent to do so within 180 days after the date of loss.

**d.** **Pair, Set or Parts Other than Fine Arts:**

**(1)** **Loss to a Pair or Set —** In case of a loss to a pair or set we may elect to:

    **(a)** repair or replace any part to restore the pair or set to its value before the loss; or

    **(b)** pay the difference between the *replacement cost* of the property before and after the loss.

**(2)** **Parts —** In case of a loss to any part of covered property, consisting of several parts when complete, we shall pay for the value of the part lost or damaged.

All other provisions of this policy apply.

8213X

## SERVICE LINE COVERAGE

For an additional premium, it is agreed that the policy is amended as follows. All of the changes below apply only to the extent coverage is provided by this endorsement.

We cover up to $12,000 for physical loss or damage to your *covered service line* that is the direct result of a *service line failure*.

However, we do not cover:

1. Additional costs incurred for loss or increased usage of water, natural gas, propane, or any other service caused by or resulting from a *service line failure*;

2. Extra cost to alter or relocate *covered service lines*, unless alteration or re-location is required by ordinance or law;

3. Loss or damage to a *covered service line* that is damaged while it is being installed, dismantled, or repaired. However, this shall not apply if a covered *service line failure* necessitated such installation, dismantling, or repair; or

4. Clean up or remove *pollutants or contaminants*, hazardous waste, or sewage.

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY LOSSES WE DO NOT COVER

Under **9. Earth Movement**, the following is added below item **c.**:

   However, Earth Movement does not include frost heave.

The following is added to **Building Property Losses We Do Not Cover**:

   We will not pay for loss, under any part of this coverage, that consists of, or is directly and immediately caused by, one or more of the perils listed in items below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   **a.** fire or water, or other means used to extinguish a fire;

   **b.** lightning, windstorm or hail;

   **c.** explosion;

   **d.** riot or civil commotion, smoke, aircraft, including self-propelled missiles and spacecraft, theft; or

   **e.** breakage of glass.

## ADDITIONAL PROPERTY COVERAGES

The following are added:

1. **Environmental, safety and efficiency improvements.** If a *covered service line* requires replacement due to a *service line failure*, we cover the additional cost to replace with materials that are better for the environment, safer, or more energy or water efficient than the materials being replaced.

   However, an increase to the size or capacity of the materials is not covered.

   **SPECIAL LIMIT OF LIABILITY.** The most we will pay for this additional coverage is up to an additional 50% of the cost to repair or replace with like, kind and quality and does not increase the limit of liability that applies under this endorsement.

2. **Excavation costs,** meaning the necessary and reasonable excavation costs that are required to repair or replace the damaged *covered service line*.

3. **Expediting expenses,** meaning the reasonable extra cost to:

   **a.** make temporary repairs; and

   **b.** expedite permanent repairs or permanent replacement.

0000072DEBDEV417655552214 EP14

4. **Coverage for outdoor property.** We cover outdoor property, including but not limited to, trees, shrubs, plants, lawns, walkways, and driveways, that is damaged as a result of a *service line failure* or that is damaged during the excavation of your *covered service line* following a *service line failure*.

## SECTION I — PROPERTY CONDITIONS

Item **1. Deductible** is deleted and replaced by the following:

1. **Deductible**. We cover only that part of the loss over $500. No other deductible applies to this coverage.

Item **5. Loss Settlement** is deleted and replaced by:

5. **Loss Settlement**. We will pay the full cost of repair or replacement but not exceeding the smallest of the following amounts:

   a. The limit of liability that applies to this endorsement;

   b. the *replacement cost* of that part of the damaged covered property for like kind, quality, size, capacity and use on the same premises as determined shortly following the loss, except as provided in Additional Property Coverages, Environmental, Safety and Efficiency Improvements above;

   c. the full amount actually and necessarily incurred to repair or replace the damaged covered property as determined shortly following the loss;

   d. the direct financial loss you incur; or

   e. our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

The following are added:

   **Limit of Liability**. The limit of liability stated in this endorsement is the most we will pay for loss or expense arising from any *one service line failure* and does not increase any limit of liability under Section I of the policy.

   **Other Coverage**. If a loss covered under this endorsement is also covered by another provision in the policy, we will pay only that portion of the loss which exceeds the coverage provided elsewhere in the policy.

## POLICY DEFINITIONS

The following are added to item **3.**:

   "*Covered service line*"

   (1) *Covered service line* means exterior underground piping and wiring, including permanent connections, valves, or attached devices providing one of the following services to your *residence premises*:

   (a) Communications, including cable transmission, data transmission, internet access, and telecommunications;

   (b) Compressed air;

   (c) Drainage;

   (d) Electrical power;

   (e) Heating, including geothermal, natural gas, propane, and steam;

   (f) Waste disposal; or

   (g) Water.

   (2) A *covered service line* must be owned by you or you must be responsible for its repair or replacement as required by law, regulation, or service agreement. Should repair or replacement be your responsibility, a *covered service line* ends at the precise location where your responsibility for such repair or replacement ends. However, in no event will a *covered service line* extend beyond the point of connection to the main service or utility line.

**(3)** A *covered service line* does not include:

    **(a)** That part of piping or wiring that runs through or under a body of water, including but not limited to, a swimming pool, pond, or lake;

    **(b)** That part of piping or wiring that runs through or under the dwelling or other structure, other than walkways and driveways;

    **(c)** Piping or wiring that is not connected and ready for use;

    **(d)** Septic systems, including leach fields, septic tanks, pumps, motors, or piping that runs from the septic tank to the leach fields, other than covered waste disposal piping running from your dwelling or other structure to a septic tank;

    **(e)** Water wells, including well pumps or motors;

    **(f)** Heating and cooling systems, including heat pumps; or

    **(g)** Sprinkler system pumps, motors, or heads.

"*One service line failure*" means: When an initial *service line failure* which causes other *service line failures*, all will be considered *one service line failure*. All *service line failures* that are the result of the same event will be considered *one service line failure*.

"*Service line failure*" means a leak, break, tear, rupture, collapse, or arcing of a *covered service line* not otherwise excluded. A *service line failure* may be caused by, but is not limited to, the following perils:

**(1)** Wear and tear, marring, deterioration, or hidden decay;

**(2)** Rust or other corrosion;

**(3)** Mechanical breakdown, latent defect, or inherent vice;

**(4)** Weight of vehicles, equipment, animals, or people;

**(5)** Vermin, insects, rodents, or other animals;

**(6)** Artificially generated electrical current;

**(7)** Freezing or frost heave;

**(8)** External force from a shovel, backhoe, or other form of excavation; or

**(9)** Tree or other root invasion.

*Service line failure* does not include blockage or low pressure of a covered service line when there is no physical damage to the *covered service line*.

All other provisions of this policy apply.

## EARTHQUAKE COVERAGE

1.  For an additional premium, we insure for accidental direct physical loss to property described in Coverages A, B and C, Building Additions and Alterations and Condominium Building Items caused by an *earthquake*, provided the *seismic event* of which the *earthquake* is a part must commence during the policy period and while this endorsement is in effect.

2.  **DEDUCTIBLE**

    We will pay only that part of the loss over the applicable *earthquake* deductible listed on the Policy Declarations. This deductible shall apply separately to loss under **Coverage A — Dwelling, Coverage B — Other Structures, Coverage C — Personal Property, Building Additions and Alterations** and **Condominium Building Items.** This deductible amount shall not be less than $250 in any one loss.

3.  **SPECIAL EXCLUSIONS**

    We do not cover loss resulting directly or indirectly from flood of any nature, tsunami, or tidal wave, whether caused by, resulting from, contributed to or aggravated by *earthquake.*

4.  **DEFINITIONS**

    The following is added:

    *"Seismic event"* means one or more *earthquakes*, including aftershocks, that occur within a 360-hour period. A *seismic event* commences upon the initial *earthquake* and all *earthquakes* or aftershocks that occur within 360 hours immediately following the initial *earthquake* are considered to be part of the same *seismic event.*

    This coverage does not increase the limits of liability stated in this policy.

    To the extent that *earthquake* coverage is provided by this endorsement, **Section I — Property Coverages, Building Property Losses We Do Not Cover, Earth Movement** does not apply.

    All other provisions of this policy apply.

    HOM-7302/EP 1/09

## OHIO MINE SUBSIDENCE INSURANCE UNDERWRITING ASSOCIATION

### MINE SUBSIDENCE INSURANCE COVERAGE FORM

In consideration of an additional premium the structure at the described location per the insurance policy to which this mine subsidence insurance coverage form attaches is insured against direct loss on an occurrence basis caused by mine subsidence as herein defined and for the limit(s) of liability as stated below. This mine subsidence insurance is provided by the Mine Subsidence Insurance Fund. This endorsement creates no liability on the part of the insurance company issuing the policy to which this endorsement attaches or the Ohio Mine Subsidence Insurance Underwriting Association or its members, or the Ohio FAIR Plan Underwriting Association or the Ohio Guaranty Association or its members. Also, no liability is created on the part of the state of Ohio beyond the premiums paid into the Fund.

### DEFINITIONS

1. *"Mine subsidence"* means lateral or vertical movement including the collapse, which results from such movement as a result of man made underground coal mines, clay mines, limestone mines and salt mines. Mine subsidence does not include loss caused by earthquake, landslide, volcanic eruption, or collapse of strip mines, any surface mines, storm and sewer drains, or rapid transit tunnels.

2. An *"occurrence"* is a single subsidence event or several subsidence events which are continuous.

3. A *"structure"* means a 1-4 family dwelling building fixed to realty but does not include the land, trees, plants, crops, sidewalks, driveways, outbuildings, detached garages, industrial, or commercial buildings.

4. *"Private garages"* are other structures at the described location, set apart from the dwelling structure by clear space. This includes structures connected to the dwelling structure by only a fence, utility line, or similar connection. However, these other structures may not be used in whole or in part for commercial, manufacturing, or farming purposes nor be rented by or held for rental to any person not a tenant of the dwelling structure.

5. *"Sidewalks and driveways"* are those that are usual to a 1-4 family dwelling structure and that are used primarily by the residents of the structure at the described location.

6. *"Additional living expense"* is any necessary increase in living expenses due to damage to the structure at the described location by mine subsidence which causes the structure to be unfit for habitation.

7. *"Fair rental value"* is the rental income lost net of non-continuing expenses if a part of the structure is damaged by mine subsidence and that damage causes the rental structure or the rented part of the structure to be unfit for habitation.

### PROPERTY COVERED

This coverage applies to the structure at the described location including:

   (1) The cost of excavation or grading.

   (2) Foundations of buildings, boilers or engines which are below the under surface of the lowest basement floor or where there is no basement below the surface of the ground.

   (3) Underground pilings, piers, pipes, flues and drains and/or pilings, which are below the watermark.

This coverage may apply to *private garages* within the special limits of liability of the following loss payment clause of this coverage form.

This coverage may apply to *sidewalks and driveways* but only if there is subsidence damage by the same *occurrence* to the insured *structure*. See the special limits of liability within the following loss payment clause of this coverage form.

### LOSS PAYMENT

The limit of liability for loss to the *structure* at the described location under this coverage form shall not exceed the smallest of the following amounts:

   (1) The limit of liability on your dwelling in the insurance policy to which this mine subsidence insurance coverage form attaches or $300,000, whichever is less;

HOM-7313/OHEP 9/13                                                      

(2) If more than one coverage for *mine subsidence* insures any given *structure,* the limit of liability is the largest limit of coverage on a single insurance policy to which this mine subsidence insurance coverage form attaches or one single limit of $300,000, whichever is less;

(3) The actual cash value of the loss if repairs will not be made to the property damaged by *mine subsidence.* Actual cash value is defined as replacement cost less depreciation or betterment;

(4) The amount actually and necessarily expended in repairing or replacing the insured *structure* with modern building materials only if that structure's repair or replacement is made intending that the *structure* have the same occupancy and use;

(5) The amount available in the Mine Subsidence Insurance Fund administered by the Governing Board of the Mine Subsidence Insurance Underwriting Association.

Special limits of liability apply to the coverage for *driveways, sidewalks,* and *private garages* as follows:

(1) The total limit of liability for all *sidewalks and driveways* is an amount of up to 10% of the *mine subsidence* coverage limit of liability for the insured *structure.* In no case will this limit of liability exceed the amount actually and necessarily expended by the insured in repairing or replacing any *sidewalks and driveways* for which the insured has the responsibility for repair or replacement.

(2) The total limit of liability for all *private garages* is an amount of up to 10% of the *mine subsidence* coverage limit of liability for the insured *structure.* In no case will this limit of liability exceed the amount actually and necessarily expended in repairing or replacing the *private garages* with modern building material and payment will be made only if the repair is made intending that the building(s) be *private garage(s)* after repaired or replaced.

An amount of coverage of up to $5,000 will be paid for *additional living expense* and/or *fair rental value* if the insured *structure* is not fit to live in due to a *mine subsidence occurrence.* Payment will be for the shortest time required for repair of the *mine subsidence* damage.

The total of all amounts of coverage compensable to an insured will not exceed $300,000.

## PERILS NOT INSURED AGAINST

The mine subsidence coverage does not insure against loss caused by earthquake, landslide, volcanic eruption, or collapse of strip mines, any surface mines, storm and sewer drains or rapid transit tunnels, or other earth movement.

## DEDUCTIBLE

The following deductible provision applies per *occurrence:*

2% of the coverage available with a minimum deductible of $250 and a maximum deductible of $500.

## OTHER PROVISIONS

(1) This coverage is provided by provisions of Ohio Revised Code 3929.50 to 3929.53 and 3929.55 to 3929.56 and 3929.58 to 3929.61 and any subsequent amendments thereof enacted by the Ohio legislature. The amounts payable under this coverage are limited to the balance in the Mine Subsidence Insurance Fund from which all claims and other expenses of administrating this Fund are paid.

(2) The coverage afforded herein shall not be subject to provisions 3929.25 commonly known as the valued policy law.

(3) All claims authorized for payment shall be paid directly by the Mine Subsidence Insurance Fund.

(4) This entire coverage shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

(5) There is no coverage for any loss occurring:

(a) While the hazard is increased by any means within the control or knowledge of the insured; or

(b) While a described building, whether intended for occupancy by owner or tenant, is vacant, or more than 50% unoccupied beyond a period of sixty consecutive days.

(6) This coverage shall terminate when the insurance policy to which this mine subsidence insurance coverage form attaches is cancelled or non-renewed. The insured shall receive a pro-rata refund of the unearned premium provided that if the unearned premium to be refunded is less than $3.00, it will be refunded only if the first named insured specifically requests in writing that it be returned.

(7) If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, and if the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may payoff the mortgage debt and require an assignment thereof and the mortgage.

(8) The insured shall give immediate written notice of any loss to the Fund through his insurance company, protect the property from further damage, put it in the best possible order, furnish an estimate of the damaged property showing in detail, the amount of loss claimed; and within sixty (60) days after the loss unless such time is extended in writing, by the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association, the insured shall render a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any structure herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if destroyed or damaged, the insured, as often as may be reasonably required, shall exhibit to any person designated by the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association all that remains of any property herein described, and submit to examinations under oath by any person named by the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association and subscribe the same; and, as often as may be reasonably required, shall produce for examination of all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association or its representative, and shall permit extracts and copies thereof to be made.

(9) In case the insured and the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association shall fail to agree as to the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately the loss to each item; and failing to agree; shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association shall determine the amount of loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

(10) There can be no abandonment to the Ohio Mine Subsidence Insurance Fund Association of any property.

(11) No suit or action on this coverage for the recovery of any claims shall be sustainable in any court of law or equity unless all the requirements of this coverage shall be complied with, and unless commenced within twelve months next after inception of the loss.

(12) As part of consideration given for the coverage provided by this endorsement, the insured agrees that the Governing Board of the Ohio Mine Subsidence Insurance Underwriting Association will receive full subrogation rights to the extent of any payment made to the insured. The Board's right shall be against any party who might be legally liable for the loss as determined by the Board. These subrogation rights shall be considered both contractual and equitable and shall be self-executing at the time any payment is made by the Board through the Ohio Mine Subsidence Insurance Fund, without the necessity of any written assignment. The Board's rights of assignment, subrogation and reimbursement are primary and shall take priority

over any rights held by the insured, the insured's attorney, representative or any other party to any recovery. The insured agrees that the insured will reimburse the Board for any amounts which are later recovered from any third party's insurer, or any other person, by way of settlement or in the satisfaction of any judgement of or upon any claims arising from a loss paid under this mine subsidence endorsement, irrespective of whether any such settlement or judgment may or may not provide reimbursement to the insured for all of the insured's injuries or other damages. The insured covenants to refrain from damaging, destroying or releasing the Board's right of recovery against any third party. Any breach of the conditions of this paragraph will result in the forfeiture of all rights to recover any benefits under this mine subsidence endorsement.

(13) Nothing in this endorsement supplements, expands, increases, affects, or is affected by the coverage grants contained in the main policy to which this endorsement is affixed. The insured understands that the coverage given in this endorsement stands alone and is wholly separate and distinct from the main policy. This endorsement, therefore, shall not be construed to expand or enlarge the obligations of the company issuing the main policy for any of the coverages contained in the main policy. The language contained in the mine subsidence endorsement shall not be included by references in the body of the main policy to "other coverages" or other endorsements unless the mine subsidence endorsement is specifically named in the reference.

## IDENTITY RECOVERY COVERAGE

**ID THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT**

Service and coverage under this endorsement applies to any *insured* as defined in this policy.

**DEFINITIONS**

The following definitions are added with respect to this endorsement only:

1. *"ID Recovery Case Manager"* means a person assigned by us to help an *insured* to recover control over his or her personal identity (ID). This help may include contacting authorities, credit bureaus, creditors and businesses. Such contacts will take place with the permission and cooperation of the *insured.*

2. *"ID Theft"* means the fraudulent use of the Social Security number or other method of identifying an *insured*. This includes the fraudulent use of the personal identity of an insured to establish credit accounts, secure loans, enter into contracts or commit crimes.

   *ID theft* does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

   *ID theft* does not include the unauthorized use of a valid credit card, credit account or bank account. However, *ID theft* does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

3. *"ID Theft Expenses"* means any of the following when they are reasonable and necessary expenses that are incurred in the United States or Canada as a direct result of an ID theft.

   a. Costs for re-filing applications for loans, grants or other credit instruments.

   b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage.

   c. Costs for up to 12 credit reports from established credit bureaus dated within 12 months after discovery of the *ID theft.*

   d. Fees and expenses for an attorney approved by us for the following.

      (1) The defense of any civil suit brought against an *insured* by a creditor or entity acting on behalf of a creditor for non-payment of goods or services or default on a loan.

      (2) The removal of any civil judgment wrongfully entered against an *insured.*

   e. Actual lost wages of the *insured* for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

   f. Actual costs for supervision of children or elderly or infirm relatives or dependants of the *insured* during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the *insured.*

The following Additional Coverage is added under **Section I:**

**IDENTITY RECOVERY COVERAGE**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met.

1. There has been an *ID theft* involving the personal identity of an *insured* under this policy; and

2. Such *ID theft* is first discovered by the *insured* during the policy period for which this Identity Recovery coverage is applicable; and

3. Such ID *theft* is reported to us within 60 days after it is first discovered by you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

If all three of the requirements listed above have been met, then we will provide the following to the *insured:*

1. **Case Management Service**

   Services of an *ID recovery case manager* as needed to respond to the *ID theft.*

2. **Expense Reimbursement**

   Reimbursement of necessary and reasonable *ID theft expenses* incurred as a direct result of the *ID theft.*

This coverage is additional insurance.

**LIMITS**

Case Management Service is available as needed for any one *ID theft* for up to 12 months in a row from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $25,000 annual aggregate per *insured.* This limit is the most we will pay for the total of all loss or expense arising out of all *ID thefts* to any one *insured* which are first discovered by the *insured* during the present annual policy period. This limit applies regardless of the number of claims during that period.

An *ID theft* may be first discovered by the *insured* in one policy period and continue into other policy periods. If so, all loss and expense arising from such *ID theft* will be subject to the aggregate limit applicable to the policy period when the *ID theft* was first discovered by the *insured.*

Coverage for legal costs is found under item **d.** of the definition of *ID theft* expenses. Such legal costs are part of, and not in addition to, the Expense Reimbursement coverage limit.

Item **e.** Lost Wages and item **f.** Child and Elder Care Expenses of the definition of *ID theft expenses* are jointly subject to a sub-limit of $250 per day, not to exceed $5,000 in total. This sub-limit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the *ID theft* by the *insured.*

**DEDUCTIBLE**

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible as shown on your Declarations page. You shall be responsible for only one deductible under this endorsement during any one policy period.

**EXCLUSIONS**

The following additional exclusions apply to this coverage. These exclusions apply to both Case Management Service and Expense Reimbursement.

We do not cover loss or expense arising from any of the following.

1. The theft of a professional or business identity.

2. Any fraudulent, dishonest or criminal act by an *insured.* This includes any such act by a person aiding or abetting an *insured.* This also includes any such act by an authorized representative of an *insured.* In all these cases, it does not matter whether the individual is acting alone or in collusion with others.

3. Loss other than *ID theft expenses.* Account balances which arise out of fraudulent charges would be one example of loss other than *ID theft expenses.*

4. An *ID theft* first discovered by the *insured* prior to or after the period for which this coverage applies. This exclusion applies whether or not such *ID theft* began or continued during the period of coverage.

5. An *ID theft* that is not reported to us within 60 days after it is first discovered by the *insured.*

6. An *ID theft* that is not reported in writing to the police.

**CONDITIONS**

The following additional Conditions apply to this coverage.

**A. Assistance and Claims**

If you have questions or need help, please call the **ID Recovery Help Line** at **1 (800) 631-9073.**

The **ID Recovery Help Line** is available to provide you with the following.

1. Information on how to respond to a possible **ID theft.**

2. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an **insured** prior to a determination that a covered **identity theft** has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered **identity theft** has not occurred.

As respects Expense Reimbursement Coverage, you must send to us receipts, bills or other records that support your claim for **ID theft expenses.** Such records must be sent to us within 60 days after our request.

**B. Computer Security**

Each **insured** has the responsibility to use and maintain security for his or her computer system. This includes the use of personal firewalls and anti-virus software. This also includes the proper disposal of used hard drives.

**C. Services**

The following conditions apply as respects any services provided by us or our designees to you or any **insured** under this endorsement.

1. Our ability to provide helpful services in the event of an **ID theft** depends on your cooperation, permission and assistance.

2. All services may not be available or applicable to all individuals. For example, **insureds** who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3. We do not warrant that our services will end or solve all problems associated with an **ID theft.** We do not warrant that our services will prevent future **ID thefts.**

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HOM-7307/EP 1/09

## EQUIPMENT BREAKDOWN COVERAGE

**PROPERTY WE COVER**

For an additional premium we cover up to the amount stated in your policy declarations for accidental direct physical loss to your covered property located on the *residence premises* caused by equipment *breakdown* as described in this endorsement.

**BUILDING PROPERTY WE COVER**

We cover *equipment breakdown.* To the extent *equipment breakdown* coverage is provided under this endorsement, "mechanical breakdown" named in **Building Property Losses We Do Not Cover, 6.b.,** does not apply.

**PERSONAL PROPERTY WE COVER**

*Equipment breakdown* is added to **Personal Property Losses We Cover**

**EQUIPMENT BREAKDOWN ADDITIONAL COVERAGES**

The following *Equipment Breakdown* coverages are added:

1. **Expediting Expense**

   We will pay up to $3,000 per occurrence for the extra costs to expedite repair or replacement to covered property for loss due to an *equipment breakdown,* meaning:

   The reasonable extra cost of temporary repair and of expediting the repair or replacement of damaged equipment, including overtime and the extra cost of express or other rapid means of transportation.

2. **Spoilage Coverage**

   We will pay up to $3,000 per occurrence for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by an *equipment breakdown* to covered property.

3. **Cleanup and Removal of *Pollutants or Contaminants***

   We will pay up to $3,000 per occurrence for the necessary clean up and removal of *pollutants or contaminants* resulting from an *equipment breakdown.*

   The limit of liability for each additional coverage described in **1.** through **3.,** above, shall not increase the limit of liability shown in the policy declarations for this endorsement.

**EQUIPMENT BREAKDOWN CONDITIONS**

The following Loss Settlement Conditions shall apply to covered loss caused by *equipment breakdown:*

1. **Deductible** We cover only that part of the loss that exceeds $500. In the event that more than one deductible may be applied to a loss that includes *equipment breakdown* the single highest deductible shall be applied.

   You may, however, elect a separate loss settlement for *equipment breakdown,* separate from any other loss covered under the policy, subject to a $500 deductible.

2. **Loss Settlement**

   a. We will pay the amount actually and necessarily incurred to repair or replace covered property damaged by an *equipment breakdown.* Our payment will be the lesser of:

      (1) The cost at the time of the *equipment breakdown* to repair the damaged covered property;

      (2) The cost at the time of the *equipment breakdown* to replace the covered property with property of like kind, capacity, size and quality; or

      (3) The amount you actually spend that is necessary to repair or replace the damaged property.

   b. Repair parts or replacement covered property must be:

      (1) of like kind, capacity, size and quality; and

      (2) used for the same purpose.

   c. If the cost of repairing or replacing only a part of the covered property is greater than:

      (1) The cost of repairing the covered Property; or

    **(2)** The cost of replacing the entire Covered Property on the same site.

    We will pay the lesser of (1) or (2).

  **d.** *Equipment Breakdown* coverage does not extend beyond the *Residence Premises.*

  **e.** **ENERGY STAR Improvements — *Using Less Energy, Saving Money and Helping to Protect our Environment***

    If Covered Property requires replacement due to an *equipment breakdown,* we will pay the additional cost to replace non ENERGY STAR rated equipment with equipment that is an ENERGY STAR Qualified Product as stated within www.energystar.gov.

    However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable coverage limits or apply to any Actual Cash Value loss settlement.

    ENERGY STAR is a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy whose objective it is to help you save money and protect the environment through energy efficient products and practices.

**DEFINITIONS**

The following definition is added with respect to this endorsement only:

*Equipment breakdown* means:

**1.** Accidental physical loss or damage originating within:

  **a.** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

    **(1)** waste disposal piping;

    **(2)** any piping forming part of a fire protective system; and

    **(3)** any water piping other than:

      **(a)** boiler feed water piping between the feed pump and the boiler;

      **(b)** boiler condensate return piping; or

      **(c)** water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes;

  **b.** all mechanical, electrical, electronic or fiber optic equipment;

**2.** caused by, resulting from, or consisting of:

  **a.** mechanical breakdown;

  **b.** electrical or electronic breakdown; or

  **c.** rupture, bursting, bulging, implosion, or steam explosion.

**3.** However, *Equipment breakdown* shall not mean loss, damage, cost or expense directly caused by, contributed to, resulting from or arising out of the following causes of loss:

  **a.** Losses excluded under the policy to which this endorsement is attached; or

  **b.** Perils insured against under Personal Property Losses We Cover of the policy to which this endorsement is attached; or

  **c.** any sinkhole collapse, volcanic action, earth movement, leakage from fire extinguishing equipment, water, or flood.

All other provisions of this policy apply.

This policy is signed on our behalf by our President and Secretary.

James MacPhee
President

Mark C. Touhey
Vice President and Secretary

This policy includes copyrighted material of Insurance Services Office, Inc. with its permission.

HOM-7232/EP 1/09
G5